13929

POOLE v. JEFFERSON STANDARD LIFE INS. CO. *ET AL.*
JEFFERSON STANDARD LIFE INS. CO. v. STANDARD
BLDG. CO. *ET AL.*

(177 S. E., 24)

*Messrs. Johnson & Johnson,* for appellant,

*Mr. Jesse W. Boyd,* for respondents,

October 29, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Jefferson Standard Life Insurance Company obtained judgment against Standard Building Company et al. for foreclosure of a mortgage of real estate. The mortgaged premises were sold by the Master for Spartanburg County, at public outcry, on Saturday, December 4, 1933, pursuant to the directions of the decree of foreclosure, at which sale the only bid for the property was that of $25.00 made by J. H. Rothrock.

The present litigation arose over subsequent events relating to bids made, or attempted to be made, during the thirty-day period when the bidding was still open, under the provisions of the Acts of 1932 and 1933 regulating such sales, the pertinent provisions of which are these: "Section 1: From and after the approval of this Act, in all judicial sales of real estate the bidding shall not be closed upon the day of sale, but shall remain open until noon of the thirtieth

day after the sale, exclusive of the day of sale, within which thirty days period any person, other than the highest bidder at the sale or any representative thereof in foreclosure suits, may enter a higher bid upon complying with the terms of sale by making any necessary deposit as guaranty of his good faith, and thereafter within such period any person other than such highest bidder at the sale or any representative thereof in foreclosure suits, may in like manner raise the last highest bid, and the successful purchaser shall be deemed to be the person who submitted the last highest bid within said period and make the necessary deposit or guaranty: Provided, That if the thirtieth day falls on Sunday, the bidding shall be so closed at noon on the Monday immediately following."

Quoted from Section 1 of Act No. 366, Acts 1933 (38 St. at Large, p. 511), which Act amends the Act of 1932 (37 St. at Large, p. 1529) regulating judicial sales.

A question having arisen between Jefferson Standard Life Insurance Company and Dixon Poole, Jr., as to which had made the last bid, the Master declined to make deed to the premises to either of the claimants until this question was settled. Thereupon the insurance company obtained from his Honor, Judge Sease, the resident Judge of the circuit, a rule against the Master, Mrs. Ray (who is no longer interested in the case), and D. L. Poole, requiring them to show cause why the bid of the insurance company should not be accepted and deed made to it. The rule was returnable January 20, 1934. The master made no return at the time, but did subsequently. Poole made no return at that time, but appeared by his counsel, Johnson & Johnson, and made oral objection to the jurisdiction of the Court on the ground that the Court could not hear the matter on motion and affidavits, he having, since the service of plaintiff's motion, commenced an action against the Master alone. He also moved to refer the matter to a Special Master. The objections and motion were overruled. The hearing was continued,

and this appellant, by leave of the Court, was allowed to file return and affidavits, which he did.

Each party asked the confirmation of its and his bid, and protested the confirmation of the bid of the other.

The matter was heard by Judge Sease January 27, 1934. January 30, 1934, Judge Sease filed an order confirming the bid of Jefferson Standard Life Insurance Company and directing the Master to make deed to it to the premises so sold by him.

From this order, the rulings, and other orders of the Court, Dixon L. Poole, Jr., appeals upon fourteen exceptions. He also appeals from the order of Judge Sease which settles the "case" for hearing in this Court. It will not be necessary to discuss each of these exceptions, but all of them will have consideration.

It appears from the record that J. H. Rothrock made the only bid at the public sale of the mortgaged premises; it was for $25.00, which was entered by the Master on his sales book. The appellant contends that this bid was made by J. H. Rothrock at the request of J. W. Boyd, Esq., the attorney of the Jefferson Standard Life Insurance Company, and this fact deprives the insurance company, under the terms of the statute, from raising the bid. It was obligatory upon the appellant to prove that this bid by Rothrock was made on behalf of the insurance company. It has offered no evidence in support of its contention thereabout; whereas the affidavits of Mr. Rothrock and Mr. Boyd show that the contention is without merit.

The time limit fixed by the Act of 1933 in which the Rothrock bid could be raised was 12 o'clock, noon, of the 3rd day of January, 1934. Before that hour Dixon L. Poole, Jr., went to the office of the Master and made a bid of $500.-00 for the property, which was entered on the sales book. During the forenoon of that day, Mr. Jesse W. Boyd, the attorney of the mortgagee, Jefferson Standard Life In-

surance Company, went to the office of the Master, and, finding him absent, said to the Clerk of the Master, Miss Stuckey, that he would raise the bid on the property. He affirms in his affidavits that he is confident in his belief that he stated to her the name of the property and the amount of the bid. She does not remember that he stated the name of the property or the amount of the bid. No entry was made upon the sales book, nor did she inform the Master of this occurrence upon his return to his office. The Master testifies that he left his office shortly after 11 o'clock, but returned before noon, in time to have entered all bids in his sales book before noon; that the bid of Dixon L. Poole, Jr., of $500.00 was the last so entered—and the legal deposit made. He thereupon notified Mr. Poole that he was the last bidder. On his return from luncheon about 3 o'clock p. m., he found on his desk a letter from Mr. Jesse W. Boyd which sought to offer a bid of $4,000.00. This letter must have reached his office in the mail about 2 o'clock p. m.

Mr. Boyd testifies that he does not remember the exact time he mailed the letter, but it was in the moring after he had returned from the Master's office, that shortly after 9 o'clock that morning he went to the Master's office for the purpose of raising this bid; and for this reason he told Miss Stuckey, the office stenographer, that it was necessary for him to raise this bid, and, although she does not appear to remember it, he still believes that he stated to her the amount of his bid. Deponent's intention was to state it. He thought at the time his bid was being entered on the sales book.

When the Master received Mr. Boyd's letter, he wrote Mr. Poole of the fact that Mr. Boyd had offered a bid of $4,000.00, and that he would not make deed to either of them until it was settled to whom it should be made.

These are the cardinal facts around which the determination of this controversy revolves.

There is no doubt that the bid of the appellant was regularly and timely made. There is no doubt that the bid of Mr. Boyd for the insurance company was not entered on the Master's sales book and that the deposit required by the Act was not made.

Do these facts preclude the Court of equity from inquiring into the sale, and was the method pursued by the respondent the correct one to bring the matter within the jurisdiction of the Court?

There is no question that it is the policy of the Courts to uphold judicial sales when regularly made.

As said in *Farr v. Gilreath,* 23 S. C., 502: "It is the policy of the law to sustain judicial sales when it can be done *without violating principle or doing injustice."*

The words which we have italicized make it plain that in proper cases the Court will set aside a judicial sale. This power of the Courts is not circumscribed by the Acts of 1932 and 1933, which relate to the manner of making judicial sales. The old rule that "the sale is closed when the hammer falls" is changed by those Acts, which transfer the time of closing the sale to noon of the thirtieth day after the public sale. Any irregularity which may occur at any time after the public sale, up to the noon hour of the thirtieth day, would be as potential to invoke the power of the Court of equity as if it occurred on the day of the public auctioning.

Did plaintiff proceed by the method usually employed in such cases?

"In the exercise of that control the Court sometimes directs a bill for a specific performance; but it often decides the question on motion, and a rule to show cause. It prefers a bill where it has some doubts; but, in cases which appear to be clear, it acts upon motion to show cause. And surely this is the proper course in most cases; for generally sales are made to settle estates, to pay creditors, to divide estates among heirs, and such purposes as require speed. This mode of proceeding prevents great delays, and

saves great expense." *Gordon v. Saunders,* 2 McCord, Eq. 162.

It has been the almost universal rule in this State to bring such proceedings as here involved in the original case by a rule to show cause. The appellant himself recognized the validity of this proceeding, for, after his objections to the jurisdiction of the Court and his motion to refer the case had been overruled, he made return to the rule. He has waived his right to object now.

We do not concur in the disposition which the trial Court has made of the matter. The Jefferson Standard Insurance Company has made no bid which is in compliance with the terms of the Acts of 1932 and 1933, which regulate judicial sales. No bid was actually made and entered on the Master's sales book before 12 o'clock noon of the thirtieth day after the sale. It was therefor error to hold that this bid should be confirmed and title made to the insurance company.

However, the Court does not think that the appellant, Dixon L. Poole, Jr., should have his bid confirmed and deed made to him.

It is true that the rule is well settled that mere inadequacy of price is not sufficient ground for setting aside a judicial sale, but inadequacy of price, coupled with other incidents affecting the sale, may be sufficient ground. The rule is thus stated by Mr. Justice Hydrick in the case of *Bonham v. Cave,* 102 S. C., 308, 86 S. E., 681, 682: "No doubt the rule is that inadequacy of price unless it is so gross as to shock the conscience, *or accompanied by other circumstances warranting the interference of the Court, is not enough to move the Court to set aside a sale fairly made. But all the cases recognize the principle that where a party in interest has been misled to his detriment by the officer making the sale, through no fault of his own, relief may be had.*" (Italics added.)

In that case the plaintiff's attorney went to the office of the Master, the officer who made the sale, to ascertain the

amount due on the mortgage. Through inadvertence, the Master gave him the amount due on one installment only. When the attorney had bid that amount, he stopped bidding, and the land was bid in by another for an inadequate price. The Court held this to be ground for setting aside the sale.

In the present case all the proceedings attending the public auction sale were regular; indeed, there is no suggestion impugning the conduct of the capable officer making this sale, nor of any connected with it. But the sale was not completed on the day of the auction; it remained open for thirty days. On the thirtieth day there occurred those incidents which in the judgment of the Court warranted its intervention. There can be no doubt that Mr. Boyd went to the office of the Master in the forenoon of January 3, 1934, with the intention of filing a bid in the case. He found the Master absent, and stated his intention to the Master's office stenographer; true, she says that he did not instruct nor request her to enter a bid of any particular amount, nor ask her to instruct the Master to do so. Unfortunately she did not bring this action of Mr. Boyd to the attention of the Master when he returned to the office before 12 o'clock. She should have done so; doubtless, the Master would have communicated with Mr. Boyd and have ascertained that he was making a bid on the property. The negligence of the stenographer in the premises is responsible for the subsequent confusion. This was an office matter made known to her in the absence of the Master. Prudence required that she bring it to the attention of the Master. No sort of criticism of her motives is intended. Doubtless her failure to report the matter was inadvertent, but it fatefully affected the interests of all parties.

The bid of the appellant is wholly inadequate. There is evidence that the mortgaged premises are worth more than $5,000.00. Appellant's bid is $500.00.

There is ample authority for the Court of equity to interpose and correct this situation.

This case is in strict analogy with that of *In re Ragland* (*Saluda Land & Lumber Co. v. Saluda Crushed Stone Co.*) 172 S. C., 544, 174 S. E., 592; we quote syllabus 2: "Where receivers of mortgaged property on which mortgage was foreclosed sold property at public sale in place other than their place of business, without naming place where bids were to be received, preventing bidder who was not present from increasing bid previously submitted at receivers' place of business, sale would be set aside and resale ordered, though receivers acted in good faith and made no attempt to preclude any one from bidding (Act May 16, 1933 [38 St. at Large, p. 511])."

The decree of Circuit Judge Oxner, setting aside the sale and ordering a resale, was affirmed by this Court and ordered printed in the record of the case. From it we take the following statement: "On December 6, 1933, the last day fixed for bidding upon the property under the terms of the Act of 1933, bids were submitted, and out of this bidding the controversy herein arises. Mr. Hamblen, one of the receivers, was out of the city, and Mr. Blythe, one of the attorneys for the plaintiff and the receivers, acted for him under the authority conferred by him. At 11:50 a. m., Mr. Wing, the other receiver, Mr. Love, his attorney, and Mr. Blythe met in the office of the latter in the Masonic Temple, for the purpose of receiving bids; the time and place of such meeting having been fixed by previous agreement. On the same day and shortly before 12 o'clock, Mr. Cook, president of the Saluda Crushed Stone Company, Mr. Ragland, and Mr. Aiken went to the office of Saluda Land & Lumber Company, of which Mr. Hamblen is general manager, and there petitioner filed with Mr. Hamblen's secretary a bid for $5,500-.00 for the property and with the filing a cashier's check on Wachovia Bank & Trust Company for the sum of $550.00. Immediately upon receipt of this written bid the secretary

phoned Mr. Blythe at his office, and thereupon, upon announcement of that fact being made by Mr. Blythe at that meeting, Mr. Love, as attorney for Mr. Wing, bid for the property $1,000.00 more than the Ragland bid and delivered to Mr. Blythe a check for $650.00 payable to the receivers, and Mr. Blythe thereupon announced that this bid was accepted by the receivers. I find that this bid was made and accepted before 12 o'clock on December 6, 1933, and was the last and highest bid made for the property."

The opinion of this Court by Mr. Chief Justice Blease, affirming the circuit decree, contains the following:

"The decree in this cause of his Honor, Circuit Judge Oxner, sufficiently states the facts, and we agree with the conclusions reached therein."

"We wish to add two observations. The first is that the sale made, or sought to be made, by the receivers, was subject to the confirmation of the Court, and, since it appears that the price offered by the highest bidder was entirely inadequate, the Circuit Judge may have well refused to have confirmed the bid, even if there had been no misunderstanding on the part of the respective bidders as to the place of filing the bids. The new sale, ordered by the Judge, confirms the fact that the bids made at the first sale were entirely too low, for at the second sale, ordered by Judge Oxner, the property brought $25,000.00, about four times as much as the bids obtained at the first sale."

In the present case the discrepancy between the bid of the appellant, viz., $500.00, and that attempted to be made by the insurance company, viz., $4,000.00, is greater than that between the bid and the attempted bid in the cited case. It is even greater between the bid of the appellant and the value of the premises as testified to, to wit, $5,000.00.

It is the judgment of this Court that the judgment of the Court below be reversed; that the sale be set aside and the mortgaged premises be resold by the Master after due

advertisement, according to the terms of the decree and judgment of foreclosure.

MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur.