17529

Roy L. MULLIS, J. D. Cudd, Jess Brazzell, Terry Moffitt et al., Respondents, v. CELANESE CORPORATION OF AMERICA, Celriver Division, Appellant

(108 S. E. (2d) 547)

382

*Robert M. Ward, Esq.,* of Rock Hill, *for Appellant,*

*Messrs. Edward M. Jackson,* of Rock Hill, and *Edens & Hammer* and *Isadore S. Bernstein,* of Columbia, *for Respondents,*

May 1, 1959.

LEGGE, Justice.

Plaintiffs, employees of Celanese Corporation of America at its Celriver Plant in York County, South Carolina, suing on behalf of all employees similarly situated, set forth in

paragraphs 3, 4 and 5 of their complaint the basis of their cause of action as follows:

"3. That plaintiffs are being compelled to work on Sunday as a condition of their employment and that this condition is in violation of the public policy and laws of the State of South Carolina as relating to the rights of individuals to refrain from any worldly labor, business or work of their ordinary calling upon the Sabbath Day; that plaintiffs are physically and conscientiously opposed to working on the Sabbath Day but have been reluctant to assert these objections for fear of reprisals which the defendant corporation may take against them.

"4. That the defendant corporation has refused to pay plaintiffs one and one-half their regular daily wage for this work on the Sabbath Day as provided by Section 64-4 of the 1952 Code of Laws for South Carolina; that this payment of one and one-half the regular daily wage is a mandatory condition for the privilege of operating on the Sabbath Day and is imposed on all textile manufacturing, finishing, dyeing, printing or processing plants operating on the Sabbath Day, although the work may be of an absolute necessity or emergency which would exempt them from the penal laws of the State for that occasion.

"5. That the defendant textile corporation began operating in York County, South Carolina, during 1948 and has never complied with the laws of South Carolina in regards to work on the Sabbath Day, nor has it made any effort to pay one and one-half the daily wage to the plaintiffs for this work as required by the laws of South Carolina."

The complaint prayed, *inter alia*:

"1. That defendant be compelled to refrain from demanding work on the Sabbath Day as a condition of plaintiffs' employment;" and

"2. That plaintiffs have judgment against the defendant for back wages for the work performed on the Sabbath Day in the sum of one-half their regular daily wage for the six

(6) years immediately preceding the bringing of this action as provided by law."

In its answer the defendant alleged: that its Celriver Plant is a manufacturing establishment engaged in the production of cellulose acetate flake and cellulose acetate yarns and fibers, involving chemical processes requiring continuous and uninterrupted operation for a normal production schedule; that because of the nature of its processes it has, throughout the years complained of, operated its said plant twenty-four hours per day seven days per week, as permitted by Section 64-4 of the Code; and that Section 64-4 is not applicable to its operation.

Plaintiffs replied:

(a) Admitting that the defendant's Celriver Plant is a manufacturing establishment engaged in the production of cellulose acetate flake and cellulose acetate yarns and fibers; and alleging that such manufacture places said plant in the category of a textile manufacturing and processing plant within the purview of Sections 64-2 through 64-5;

(b) Denying that Section 64-6 exempts said plant from the operation of Section 64-4; and alleging that Section 64-6 does not purport to apply to any type of textile plant but in fact applies only to chemical manufacturing establishments; and

(c) Alleging that Section 64-6 violates the prohibition against special legislation contained in Subsection IX of Section 34 of Article III of the State Constitution and also violates the equal protection clauses of both State and Federal Constitutions, Const. art. 1, § 5; Const. U. S. Amend. 14.

Defendant thereupon moved for judgment on the pleadings; and it now appeals from the order of the circuit court overruling that motion. Respondents have moved to dismiss the appeal upon the ground that the order in question is not appealable.

The circuit judge based his denial of appellant's motion upon his conclusion that the record before him raised issues of fact. Appealability of his order depends upon the correctness of such conclusion. The motion for judgment was in the nature of a demurrer. *Page v. North Carolina Mutual Life Ins. Co.,* 207 S. C. 277, 35 S. E. (2d) 716; if the pleadings raised issues of law only, refusal of the motion was an order involving the merits within the scope of Section 15-123(1) of the Code and therefore appealable forthwith. *Elliott v. Pollitzer,* 24 S. C. 81; *McCown v. McSween,* 29 S. C. 130, 7 S. E. 45; *Woods v. Rock Hill Fertilizer Co.,* 102 S. C. 442, 86 S. E. 817, Ann. Cas. 1917D, 1149. Cf. *Johnson v. Abney Mills,* 219 S. C. 231, 64 S. E. (2d) 641.

Careful consideration of the pleadings leads us to the conclusion that they present but two issues, neither of which is factual, towit:

(1) Is Section 64-6 applicable to appellant's Celriver Plant?

(2) Is Section 64-6 constitutional?

A further issue, also legal, is suggested by respondents as an additional ground for sustaining the order appealed from, *viz.*: that Section 64-6 was repealed by the Act of March 24, 1954 (XLVIII Stat. at L. 1717).

Section 64-2 is, without substantial change, an Act of the Lords Proprietors ratified December 11, 1691 (II Stat. at L. 68). It forbids every "tradesman, artificer, workman, laborer or other person whatsoever" from doing "any worldly labor, business, or work of his ordinary calling upon Sunday or any part thereof, work of necessity or charity only excepted", under penalty, for each violation by a person aged fifteen years or more, of forfeiture of one dollar.

Section 64-3 is the codification, without amendment, of the Act of March 6, 1899 (XXIII Stat. at L. 100). It declares it a misdemeanor to order, require or direct any work

to be done in any machine shop on Sunday except in cases of emergency.

Section 64-4 codifies the Act of May 14, 1937 (XL Stat. at L. 528), as amended by the Act of May 20, 1939 (XLI Stat. at L. 313). It declares it unlawful "for any person owning, controlling or operating any textile manufacturing, finishing, dyeing, printing or processing plant to request, re-quire or permit any regular employee to do, exercise or per-form any of the usual or ordinary worldly labor or work in, of, about or connected with such employee's regular occu-pation or calling or any part thereof in or about such textile manufacturing, finishing, dyeing, printing or processing plant on Sunday, work of absolute necessity or emergency alone excepted and then only upon condition that such employees be paid on the basis of one and one-half the amount of the usual average day wage or salary earned by such employee during other days of the week." It provides (in accordance with the 1939 amendment) that it shall not be construed to apply to certain maintenance and custodial employees.

The Act of April 24, 1953 (XLVIII Stat. at L. 241) amended Section 64-4 by providing for Sunday operation, under permit from the Commissioner of Labor in times of national emergency, of textile manufacturing, finishing, dye-ing, printing or processing plants engaged in producing or processing goods for national defense purposes under gov-ernment contract. Code 1952, § 64-4.1. By the Act of March 24, 1954 (XLVIII Stat. at L. 1717) Section 64-4 was fur-ther amended so as to exempt from its prohibition of Sunday work not only "work of absolute necessity or emergency", but also "voluntary work in certain departments which is essential to offset or eliminate a processing bottleneck or to restore a balance in processing operations and maintain a normal production schedule." This amendment also defined a "regular employee" as one who ordinarily worked as much as eight (instead of twenty) hours per week.

Section 64-5 codifies the Act of April 4, 1934 (XXXVIII Stat. at L. 1454) as amended by the Act of May 30, 1936 (XXXIX Stat. at L. 1615). It prohibits employment of women or children to work on Sunday in mercantile or manufacturing establishments. (The 1934 Act devolved its enforcement upon the Commissioner of Agriculture, Commerce and Industries; the 1936 Act, which created a Department of Labor, appears to have been construed, in the 1952 codification, as transferring that duty to the Commissioner of Labor.)

Section 64-6, which codifies the Act of May 18, 1950 (XLVI Stat. at L. 2260), reads as follows:

"The provisions of §§ 64-2 to 64-5 shall not apply to manufacturing establishments or employees thereof when such establishments in the nature of their business involve chemical manufacturing processes requiring, of necessity, for a normal production schedule continuous and uninterrupted operation. In such industries a work week in excess of forty hours and a work day in excess of eight hours shall not be permissible except when the provisions of the Fair Labor Standards Act are complied with. The exemption herein provided shall not apply to or affect cotton, woolen or worsted manufacturing, finishing, dyeing, printing or processing plants and such plants and industries shall be controlled by § 64-4."

Respondents' cause of action is founded on Section 64-4; it must fall if appellant's operation is within the exemption contemplated by Section 64-6. In this connection we note that the complaint does not suggest that there has been any change in the nature of method of appellant's operation since 1948. We note also that in their reply respondents admit that appellant's plant is as alleged in its answer, a manufacturing establishment engaged in the production of cellulose acetate flake and cellulose acetate yarns and fibers, charging, however, that such manufacture places appellant's plant in the category of a textile manufacturing and processing

plant and therefore subjects it to Sections 64-2 through 64-5.

We have not overlooked the fact that in the first paragraph of the reply respondents deny each and every allegation of the answer "except as hereinafter specifically admitted or affirmatively alleged." But such qualified denial must be viewed in the light of respondents' admission that appellant is engaged in the production of cellulose acetate flake and cellulose acetate yarns and fibers, and of respondents' contention that such operation falls within the scope of Section 64-4. If, within the clear intendment of Section 64-6, appellant's manufacture involves chemical processes requiring for a normal production schedule continuous and uninterrupted operation, the qualified denial of the reply would not, in our opinion, be sufficient to put in factual issue the allegations of the answer to that effect. *Atlantic Coast Line R. Co. v. Little,* 195 S. C. 455, 12 S. E. (2d) 7.

What, then, was the legislative intent of Section 64-6 with respect to manufacturing establishments such as that of appellant? To put it otherwise, did the General Assembly, in the enactment of the Act of May 18, 1950 (now Section 64-6) contemplate that the production of cellulose acetate flake and cellulose acetate filament involved chemical processes requiring continuous and uninterrupted operation? Manifestly, the answer is not to be found in the bare language of the statute; and we look, therefore, into the circumstances surrounding its enactment in aid of our construction of it with respect to its applicability to appellant's operations. 50 Am. Jur., Statutes, Paragraphs 328, 334; *Crescent Mfg. Co. v. South Carolina Tax Commission,* 129 S. C. 480, 124 S. E. 761; *Moore v. Waters,* 148 S. C. 326, 146 S. E. 92; *Greenville Baseball, Inc. v. Bearden,* 200 S. C. 363, 20 S. E. (2d) 813; *City of Spartanburg v. Blalock,* 223 S. C. 252, 75 S. E. (2d) 361.

The legislative background of the 1950 Act (now Section 64-6) conclusively shows that the General Assembly recognized the manufacture of cellulose

acetate filament, and specifically appellant's operation, as requiring continuous and uninterrupted operation, and that the Act was designed to exempt such industries from the provisions of Sections 64-2 through 64-5.

At the 1949 session of the General Assembly the House of Representatives adopted a resolution (H. 1893) directing the speaker to appoint a committee of five to "study the Celanese situation in York County and report its findings and recommendations to the 1950 session". The report of the committee so appointed was made to the House on January 10, 1950 (House Journal, 1950, Vol. I, pp. 13-16). It recites: that the committee had conferred with officials of Celanese Corporation of America's Celriver plant in York County; had visited and inspected said plant and made itself generally familiar with its operation; and had conferred with employees in said plant, with representatives of organized labor, and with persons familiar with the operation of industrial plants of this type and with laws governing such operation in other states. We quote in full Paragraph IV of the report:

"Celanese at Celriver is engaged in the manufacture of a synthetic yarn by the filament cellulose—acetate process; and it is absolutely necessary that operations be continuous. The very nature of the chemical process employed requires that it be continuous; and for that reason we find from our observations that it is necessary that the plant operate seven days per week. It cannot be shut down and started at will. By reason of the institution of a 'rotating shift' system, no employee works regularly on Sundays. But it is necessary that some employees work on Sunday hours when this day is reached on their shift schedule. Sunday operation is necessary, from our findings; and we recommend that the statutes be amended to permit continuous-operation plants of this type to operate on Sunday.

"(Although this is beyond the scope of our inquiry, we are nevertheless familiar with the fact that a number of other plants now in South Carolina or under construction

are continuous-operation plants, because of the nature of the processes employed and the goods manufactured. Other plants of this type will, from time to time wish to come into our State; and we feel that the revision of law recommended would not only solve the Celanese problem but be extremely important in bringing new industry of this type into our State.)"

With regard to time-and-a-half pay for Sunday work, the report found:

That Celanese and all other such plants pay one and one-half the usual wages for any work in excess of forty hours per work week; that its employees have at least two, and sometimes four, sucessive days off in their weekly rotating shift schedule, so that no factor of health or recreation is involved; that to require time-and-a-half pay for regular hours of employment simply because such hours fall on Sunday would put the Celriver plant at a competitive disadvantage not only with other rayon yarn producers in Georgia, North Carolina, Virginia, Maryland, and Pennsylvania, but also within the Celanese organization itself, and might well result in the slowing down of the Celriver plant and the expansion of Celanese operations elsewhere.

The report recommended:

(1) That the statute law of South Carolina be amended: (a) to permit continuous-operation plants with a rotating shift schedule to operate seven days per week, so long as the Fair Labor Standards Act is complied with; and (b) to permit employment at regular wages on Sunday in such plants, where the Sunday employment comes within the regular forty-hour work week in any seven day period; and

(2) That a Bill (H. 1858) then before the house, which would effect the recommended revisions of the statutes, be enacted into law.

H. 1858, having passed both Houses, was ratified on May 16, 1950, and approved by the Governor on May 18, 1950. In the 1952 Code it appears as Section 64-6.

It is to be observed that Section 64-4 applies, by its terms, to "any textile manufacturing, finishing, dyeing, printing or processing plant"; Section 64-6 exempts from the provisions of 64-4 "manufacturing establishments" the nature of whose business involves "chemical manufacturing processes requiring, of necessity, for a normal production schedule continuous and uninterrupted operation", but excludes from such exemption "cotton, woolen or worsted manufacturing, finishing, dyeing, printing or processing plants." Whether cellulose acetate fibers and yarns are "textiles" and Celriver therefore a "textile manufacturing plant" is immaterial to the issue of whether appellant's operation is governed by 64-4 or 64-6. The latter section does not exclude textile manufacturing plants as such, other than those manufacturing cotton, woolen or worsted products. The test of the applicability of Section 64-6 is whether, within the contemplation of the General Assembly in its enactment, appellant's manufacture involves chemical processes requiring continuous operation.

The General Assembly may in its discretion classify pursuits, occupations or businesses for inclusion in or exemption from statutes requiring observance of Sunday. 50 Am. Jur., Sundays and Holidays, Paragraph 11; Annotation 119 A. L. R. 752. Such substantial differences rationally justifying the diversity, does not offend the equal protection clauses, *Gasque, Inc. v. Nates,* 191 S. C. 271, 2 S. E. (2d) 36; nor does it render the statute special legislation repugnant to Article III, Section 34, Subdivision IX of the Constitution of this State, *Elliott v. Sligh,* 233 S. C. 161, 103 S. E. (2d) 923. It is axiomatic that every presumption will be indulged in favor of constitutionality. Respondents concede these principles, but contend that Section 64-6 is not based upon a reasonable classification, and that whether or not the classification is arbitrary is a question of fact to be determined by evidence, not pleadings. We find no merit in this contention. In the face of the legislative investigation and findings to which we have referred, it can-

not be said that Section 64-6 is based upon arbitrary or unreasonable classification. As before pointed out, respondents' pleadings do not suggest that any change in appellant's manufacturing processes have taken place since the passage of the 1950 Act; their argument that the manufacture of cellulose acetate filament renders appellant a textile manufacturing plant within the meaning of Section 64-4 raises no factual issue, and is clearly negatived by the language of the two sections, 64-4 and 64-6, as well as by the legislative background of the latter.

Respondents' "additional sustaining ground" relates to a matter that was not before the trial court. It is, therefore, not entitled to consideration. *Colonial Life & Accident Ins. Co. v. South Carolina Tax Commission*, 233 S. C. 129, 103 S. E. (2d) 908. But, aside from that, we cannot agree that the Act of March 24, 1954 repealed Section 64-6. It merely rewrote Section 64-4, as amended by the 1953 Act, with the following changes: (1) it extended exemption to certain voluntary work; and (2) in the definition of the term "regular employee", it changed from "twenty" to "eight" the number of hours required to be ordinarily worked per week. To the extent that it reenacted the existing provisions of Section 64-4, it is to be construed not as implied repeal, but as an affirmance and continuation, of that section. 50 Am. Jur., Statutes, Paragraph 553; 82 C. J. S., Statutes, § 295; *South Carolina Mental Health Commission v. May,* 226 S. C. 108, 83 S. E. (2d) 713. The changes and additions that it made clearly related only to textile manufacturing, finishing, dyeing, printing and processing plants already subject to Section 64-4; they had nothing whatever to do with the continuous-operation chemical manufacturing plants covered by Section 64-6. To construe the general language of its repealing clause ("All acts or parts of acts inconsistent herewith are hereby repealed.") as repealing Section 64-6 would be to disregard the legislative intent of the 1954 Act, which, as its substantive provi-

sions plainly show, was concerned only with certain desired changes in Section 64-4.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.