**In re Jacob L. BARR, Debtor.**

**Jacob L. BARR, Plaintiff,**

v.

**William G. ALLEN a/k/a Jerry Allen, Defendant.**

**Bankruptcy No. 193–16528–260. Adv. No. 193–1537–260.**

United States Bankruptcy Court, E.D. New York.

Aug. 11, 1994.

Glasser & Rossi by Sheila M. Rossi, New York City, for debtor.

Reaves & Moore by George G. Reaves, Florence, SC, for defendant.

### DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This adversary proceeding arises out of and relates to this Chapter 13 case filed by Jacob L. Barr ("Barr" or "Debtor" or "Plaintiff–Debtor") on July 26, 1993. The Chapter 13 Trustee's motion to dismiss the case was granted at a hearing held before this Court on May 11, 1994. The order granting the motion was signed on July 6, 1994. It pro-

vided for the Debtor's right to convert the case to a Chapter 7 within fifteen days from the date of the entry of the order. The Debtor did not convert his Chapter 13 case by July 21, 1994, the time period permitted by the order, and it was deemed dismissed. Because of the pendency of the instant adversary proceeding initiated in that case, it was not closed by the Clerk of this Court.

Notwithstanding the foregoing facts, on June 9, 1994, Barr filed a second petition for relief under Chapter 13 of the Code. The Chapter 13 Trustee's motion to dismiss that case was granted at a hearing held before this Court on July 27, 1994. An order grant-- ing the motion was presented for settlement and signed on August 10, 1994. Like the order entered dismissing Barr's prior petition, it provided for his right to convert the case to a Chapter 7 within fifteen days from the date of the entry of the order. Such time period has not yet expired. However, on August 9, 1994, Barr filed a third petition for relief under Chapter 13 which the Clerk accepted for filing.

### FACTS

In February of 1989 Plaintiff–Debtor Jacob L. Barr purchased a parcel of land in Florence County, South Carolina from defendant, William G. Allen ("Allen" or "Defendant"), for approximately $156,000. Barr paid $75,000 cash and assumed an existing mortgage of approximately $38,000 held by Middlesex Federal Savings and Loan Association and serviced by First Citizens Mortgage Corporation ("First Citizens Mortgage"). Additionally, Barr gave Allen a note ("the Note") for the balance ($38,201.34). The Special Referee in a Decree of Foreclosure entered in an action initiated by Allen, hereinafter discussed, found that a mortgage securing the Note was filed in the office of the Clerk for Florence County, South Carolina on June 7, 1989, creating a second lien on the property.

The Note fell due on June 7, 1992. When Barr failed to satisfy the debt, the parties agreed to extend the due date to December 30, 1992. In July of 1992, Barr paid $22,000 to Allen towards the satisfaction of the Note. However, Barr did not fulfill his obligation

by the extended due date and Allen subsequently initiated the foreclosure action in Florence County on January 11, 1993. Barr failed to answer the complaint in the action which resulted in a default.

The Special Referee, after a hearing, issued the Decree of Foreclosure, dated April 20, 1993, ordering the sale of the subject property by public auction. The Decree contained the Special Referee's conclusions of law and findings of fact, which included that:

(1) Both Barr and Middlesex Federal Savings and Loan Association were served and notified of the time, place, and date of the hearing;

(2) The Note executed by Barr in favor of Allen was secured by a mortgage thereby creating a second lien on the subject property, as hereinabove noted; and

(3) The total debt due Allen was fixed at $41,446.23 inclusive of interest.[1]

Documents submitted to this Court by the Plaintiff and Defendant reflect the following:

Pursuant to the laws of the State of South Carolina, the property was sold at public auction on July 7, 1993, resulting in the sale of the property to Allen, the highest bidder, for $500. The bid was subject to the First Citizens Mortgage in the amount of $30,-882.70,[2] Florence County taxes, and assessments. Allen's bid took into account the balance due to him on the Note which was fixed at $41,446.23 on the date of the Decree of Foreclosure, plus interest at the statutory rate of 14% thereafter. Thus, in essence, Allen's bid in the aggregate amounted to $500 plus the additional sum of approximately $72,000 due under the mortgages.

The deed was executed and delivered transferring title to Allen on July 20, 1993. Less than one week later, Barr filed this Chapter 13 case.

## The Adversary Proceeding

On December 3, 1993, Barr commenced the instant adversary proceeding against Allen (1) to avoid the transfer of the property; (2) to declare the equity in the land as part of the bankruptcy estate; (3) ordering that title be transferred to Barr subject to any liens; (4) ordering the property to be turned over to a trustee in the related bankruptcy case; and (5) granting any other appropriate relief.

Allen answered the complaint denying that Barr had any interest at all in the property as of the commencement of the Chapter 13 case and subsequently moved this Court for summary judgment as to the same. He argues that the matter can be disposed of as a matter of law because the judicial sale completely divested Barr's interest in the property six days prior to the filing of his petition for relief. In support of his motion Allen maintains that because Barr had neither a legal nor an equitable interest in the property when his bankruptcy case was commenced, the property is not property of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code.[3]

In opposition to Allen's motion, Barr maintains that there are material factual disputes which render summary judgment inappropriate. According to Barr, the litigable facts are:

(1) whether the Note was secured by a mortgage;

(2) whether the foreclosure sale was procedurally proper, non-collusive and properly advertised;

(3) whether all commercially reasonable steps were taken to secure the highest bidder;

(4) whether the transfer of the property was fraudulent pursuant to section 548 of the

---

1. This total took into account the $22,000 paid by Barr in July of 1992, interest accrued, both attorney and Referee's fees, and all costs of collection prior to the hearing.

2. As of August 9, 1993 the amount due on the mortgage was $30,882.70, according to a Proof of Claim filed with this Court by First Citizens. Additionally, Mr. Allen assumed the mortgage on

August 11, 1993 and paid $29,146.35 on February 25, 1994, satisfying the debt.

3. Pursuant to section 541, the commencement of a bankruptcy case creates an estate comprised of, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

Code;[4] and

(5) whether the deed was properly transferred.[5]

Barr maintains that he was neither served nor notified of the hearing in the state court foreclosure action nor of the sale, and claims that the auction was not properly advertised. However, Allen demonstrated, through supporting affidavits, and the Decree of Foreclosure that Barr was served and the property was duly advertised for public sale.[6] Barr also alleges that he believed he had more time to pay the debt and that he paid $10,000 to Allen against the Note in May of 1993, after the Decree of Foreclosure. However, both of these allegations are unsupported.

The market value of the property, as computed by First Citizens, was deemed to be $180,400.[7] The affidavit of the Special Referee sworn to on January 12, 1994, submitted to this Court states that "[a]fter due notice and after publication required by statute, [he] conducted a judicial sale of the property on July 7, 1993. No deficiency was requested."

Despite Allen's assumption of the First Citizens Mortgage, Barr claimed that he made three mortgage installments, corroborated by cancelled checks,[8] to First Citizens from August 2, 1993 through December 17, 1993.

## DISCUSSION

Rule 56 of the Fed.R.Civ.P., made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056, provides that summary judgment shall be rendered if the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

When determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Without sufficient evidence for a finder of fact to find in favor of the non-moving party, there is no issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). Thus, a motion for summary judgment although denied when there are genuine issues as to any material fact, must be granted when there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Id.* at 247–51, 106

4. Under section 548, a foreclosure sale may be a fraudulent transfer, and therefore avoided, if it occurred within one year of the filing of the bankruptcy petition, less than a reasonably equivalent value was received for the transfer, and the debtor was insolvent on the date of the transfer or rendered insolvent thereby. 11 U.S.C. § 548(a)(2). *See* "Section 548 Issue" hereinafter set forth.

5. In raising this issue, Barr points to three payments he made to, and that were accepted by, the first mortgagee after the deed was transferred to Allen. *See infra* note 8 and accompanying text.

6. *See* Affidavit of James R. Bell, Esq., sworn to January 10, 1994 (Allen's attorney of record in the foreclosure action); Affidavit of James A. Nelson, Special Referee, sworn to January 12, 1994; Affidavit of Susan Collins, sworn to July 2,

1993 (Legal Clerk for The Florence Morning News); and Decree of Foreclosure, so ordered April 20, 1993. According to the Affidavit of Susan Collins, a Notice of Sale of the property was published in the Florence Morning News on June 18, 1993, June 25, 1993, and July 2, 1993.

7. The appraisal's accuracy has been questioned, without support, by Allen who believes the land is worth less than the First Citizen's assessment.

8. At a hearing before this Court Barr proffered three cancelled checks payable to First Citizens Mortgage Corp. of South Carolina: # 151 in the amount of $560 dated August 2, 1993, # 156 in the amount of $560 dated September 12, 1993, and # 171 in the amount of $582.40 dated December 17, 1993. Thus, Barr may have a cause of action against the Bank to recover the money paid during the time when he no longer owned the property.

S.Ct. at 2509–11; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991); *Kenston Mgt. Co. v. Lisa Realty Co. (In re Kenston Mgt. Co.),* 137 B.R. 100, 108 (Bankr.E.D.N.Y.1992).

In the instant matter, despite Barr's assertion of the above listed factual issues, the papers, supporting affidavits, and the findings of fact and conclusions of law contained in the Decree of Foreclosure all submitted to this Court, and the related proceedings held before this Court, clearly establish the facts surrounding the foreclosure sale and that the Note was secured by a mortgage. Thus, there are no issues of material fact requiring trial. The remaining issue of whether the foreclosure sale was a fraudulent transfer pursuant to section 548 of the Code is a matter of substantive law.

### *The Section 548 Issue*

Pursuant to section 548 of the Bankruptcy Code, a trustee or debtor may avoid a transfer if, *inter alia,* the debtor received "less than reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 548(a)(2)(A). For some time the appropriate definition of "reasonably equivalent value" had been heavily disputed in the Circuit Courts.[9] However, the Supreme Court recently settled the issue in holding that:

> [A] fair and proper price or a "reasonably equivalent value" for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the state's foreclosure law have been complied with.

*BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1764, 128 L.Ed.2d 556 (1994). Therefore, the disposition of the case will depend on whether the foreclosure sale *sub judice* was accordant procedurally and substantively with applicable South Carolina state foreclosure law.

Judicial real estate mortgage foreclosure sales in South Carolina are governed procedurally by Rule 71 of the South Carolina Rules of Civil Procedure. This statute empowers the appointed Master or Referee to determine the total debt and direct the sale of the property by describing the parcel, fixing the necessary legal advertisement, setting the time and location of the sale, giving notice of any senior liens, taxes or any other encumbrances, and specifying the amount and due date of the good faith deposit required as earnest money. After the sale, the Referee must then execute the deed to the purchaser and disburse the proceeds. S.C.R. of Civ.Proc.Rule 71 (1991).

The Decree of Foreclosure so ordered by the Special Referee conclusively establishes that a procedurally correct judicial sale was to be scheduled. Furthermore, the supporting affidavits proffered by Allen reveal that Barr was served, the sale was duly advertised, Allen was the highest bidder, and the Special Referee executed the deed transferring title to Allen on July 20, 1993. Therefore, it appears from the record before this Court that the judicial sale was, in all respects, consistent with South Carolina procedural foreclosure law.

The only issue with respect to substantive South Carolina foreclosure law is the possibility that the purchase price could be deemed inadequate. "[S]ome [states] forbid the property to be sold for less than a specified fraction of a mandatory presale fair-market-value appraisal." *BFP,* —— U.S. at ——, 114 S.Ct. at 1763. When the sale is procedurally correct,

> [I]t is "black letter" law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside (under state foreclosure law, rather than fraudulent transfer law) if

---

**9.** The Fifth Circuit in *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201, 204 (5th Cir.1980) (setting aside a mortgage foreclosure sale that yielded 57% of the property's fair market value) opined, in dicta, that a sale yielding less than 70% of the fair market value should be invalidated. *But see Bundles v. Baker (In re Bundles),* 856 F.2d 815, 825 (7th Cir.1988) (rejecting the "Durrett Rule" and adopting a case by case approach with a rebuttable presumption that the price was suffi-

cient under 548(a)(2)); *Lawyers Title Ins. Corp. (In re Madrid),* 21 B.R. 424, 427 (9th Cir. BAP 1982) (holding that foreclosure sales should not be set aside unless there is a defect in the sale's procedure, such as fraud, which would account for the inadequacy of the sale price), *aff'd on other grounds,* 725 F.2d 1197 (9th Cir. 1984), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984).

the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'

*Id.*

It is well settled in South Carolina that "inadequacy of price unless it is so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the court, is not enough to move the court to set aside a sale fairly made." *Poole v. Jefferson Standard Life Ins. Co.,* 174 S.C. 150, 177 S.E. 24, 27 (1934) (quoting *Bonham v. Cave,* 102 S.C. 308, 86 S.E. 681, 682 (1915)). *Accord Bennett v. Floyd,* 237 S.C. 64, 115 S.E.2d 659, 664 (1960); *Singleton v. Mullins Lumber Co.,* 234 S.C. 330, 108 S.E.2d 414, 424 (1959); *Howell v. Gibson,* 208 S.C. 19, 37 S.E.2d 271, 274–75 (1946); *Federal Nat'l Mortgage Assoc. v. Brooks,* 304 S.C. 506, 405 S.E.2d 604, 605 (Ct.App.1991); *Investors Savs. Bank v. Phelps,* 303 S.C. 15, 397 S.E.2d 780 (Ct.App.1990).

As set forth above, although the subject property may well have been purchased for less than its appraised value, inadequacy of price in and of itself is not sufficient to set aside the foreclosure sale. The consideration paid in the aggregate included: the $500 bid at the sale; the First Citizens Mortgage in the amount of $30,882.70, Florence County taxes, and assessments, which the property purchased was subject to; and the amount of the Note, which was fixed at $41,446.23 on the date of the Decree of Foreclosure, plus interest at the statutory rate of 14% thereafter. Therefore, inasmuch as Allen's bid in the aggregate amounted to $500 plus the additional sum of approximately $72,000 due under the mortgages, any inadequacy in the price paid for the property was not "so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the court." *Poole,* 177 S.E. at 27.

Thus, based on the foregoing, Allen's motion for summary judgment is granted and the instant adversary proceeding is dismissed with prejudice.

## CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

2. Allen's motion for summary judgment is granted and the instant adversary proceeding is dismissed with prejudice.

3. The Clerk is directed to close the adversary proceeding numbered 93–1537–260.