**In re PORTJEFF DEVELOPMENT CORP., Debtor.**

**Bankruptcy No. 089-90322-21.**

United States Bankruptcy Court, E.D. New York.

March 26, 1991.

---

Mark D. Silverschotz, Anderson, Kill, Olick & Oshinsky, New York City, for debtor.

Eric A. Roeckl, Hicksville, N.Y., for Movant Parviz Lavi.

Richard Ziegler, Cleary, Gottlieb, Steen & Hamilton, New York City, for Norstar Bank.

Steven G. Pinks, Pinks, Brooks, Stern & Arbeit, Hauppauge, N.Y., for creditors committee.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court is a motion by Parviz Lavi, a/k/a Pierre Lavi ("Lavi") seeking delivery of $11,100 currently in the possession of Anderson, Kill, Olick & Oshinsky ("AKO & O"). AKO & O is both the law firm representing Portjeff Development Corp. ("Portjeff"), the Debtor in this Chapter 11 proceeding, and the successor Escrow Agent under the "Purchase Agreement" underlying the present motion. AKO & O and Norstar Bank ("Norstar"), the Debtor's largest creditor, both object to the relief requested.

Lavi claims to be entitled to this money pursuant to what he denominates a "Settlement Agreement between the parties." The settlement agreement referred to by Lavi is a document dated December 22, 1988, signed and delivered by Lavi on January 19, 1989, providing for the division between Lavi and Portjeff of a deposit made by Lavi in connection with a Purchase Agreement he had entered into in May 1988 with Portjeff.

AKO & O asserts that the settlement agreement was never executed by any representative of the debtor and that Lavi is, therefore, either a party to an executory contract which has never been assumed or rejected, or he is a general unsecured creditor and, in either event, is not entitled to the relief he now seeks. Norstar objects essentially on the ground that the motion is an attempt to obtain preferential treatment of a pre-petition obligation to the detriment of Norstar and other unsecured creditors. Norstar also notes that any attempt to recover the payment called for by the unsigned settlement agreement is barred by the automatic stay imposed by Section 362 of the Code on any acts to collect pre-petition obligations.

The motion papers and the record in this case, of which the Court takes judicial notice, reflect the following:

Portjeff is in the business of the construction and sale of condominium units and real property at a site located in Port

Jefferson Station, New York. Its plans call for the construction of over 100 units. On May 20, 1988, Parviz Lavi, under the name of Pierre Lavi, a name he occasionally uses, executed a "Purchase Agreement" contract with Portjeff for condominium unit, number 803. ("Purchase Agreement" or "Agreement"). The purchase price for the unit was $156,000 and the down payment was $15,600. The purchaser undertook to obtain a mortgage commitment of $140,000. The Agreement went on to provide:

> In the event that the Purchaser is unable to obtain a mortgage commitment in the amount set forth above within thirty (30) days of the date of this Agreement, this Agreement shall become null and void and the down payment paid herein by the purchaser shall be returned to him without interest. In the event that written notice is not received by the sponsor of the Purchaser's inability to obtain such financing within the said thirty-day period, this provision shall be deemed waived by the Purchaser.

> \* \* \* \* \* \*

5. *Purchase Monies to be Held in Trust*

The Sponsor will hold in trust any and all monies received by it directly or through its agents, employees or Escrow Agent until the Unit is transferred to Purchaser or the Purchase Agreement is cancelled in accordance with its terms. All monies received hereunder will be deposited with Norstar Bank, Locust Valley, New York (the "Bank") in a special account and shall be held in escrow by such Bank pursuant to an escrow agreement between the Bank, the Sponsor and the Escrow Agent. For purposes of the Plan, the Escrow Agent shall be Rivkin, Radler, Dunne & Bayh, EAB Plaza, Uniondale, New York 11556–0111. The funds so deposited will be disbursed only in accordance with the provisions of this Agreement and the Plan. Any interest earned on such funds shall belong to the Sponsor.

> \* \* \* \* \* \*

All funds received under this Purchase Agreement will be handled in accordance with Sections 352–e(2)(b) and 352–h of the New York General Business Law and shall be released only upon the signature of a partner of the Escrow Agent.

YOU AS THE PURCHASER OF THIS RESIDENCE MAY REQUIRE THIS RECIPIENT OR CONTRACTOR TO DEPOSIT THE INITIAL ADVANCE MADE BY YOU IN AN ESCROW ACCOUNT. IN LIEU OF SUCH DEPOSIT, THE RECIPIENT OR CONTRACTOR MAY POST A BOND OR CONTRACT OF INDEMNITY WITH YOU GUARANTEEING THE RETURN OF SUCH ADVANCE.

(Notice of Motion, Exhibit A (hereinafter "Lavi Exhibit").)

Section 352–h of the New York General Business Law is entitled "Trust Funds" and provides in part:

> Whenever hereafter any person ... offers or sells securities ... to the public in or from the state of New York, then all moneys received in connection therewith, including deposits or advances therefor, shall continue to be the money of the person making such purchase, deposit or the person ... offering or selling such securities and shall not be commingled with the personal moneys or become an asset of the person ... receiving the same, and shall not be subject to attachment, levy or other encumbrance in any action by a third party against such person ...; and said funds shall remain in trust until actually employed in connection with the consummation of the transaction; ... or if the transaction does not result in the acquisition of the real estate ... for any reason or reasons, then all moneys so collected less such amounts actually employed in connection with the consummation of the transaction shall be fully returned to the investors. Any provision of any contract or agreement or understanding, whether oral or in writing, whereby a person who so purchases such securities waives any provision of this section is absolutely void.

According to Lavi's uncontradicted motion papers, he asked his attorney, Eric Roeckl, Esq., to recover his $15,600 deposit when he was unable to obtain financing and Portjeff was late on delivery. On December 22, 1988, Ross Rumsky, an attorney associated with Rivkin, Radler, Dunne & Bayh ("RRD & B"), the Escrow Agent named in the Purchase Agreement, agreed in writing to return $11,100 to Lavi upon receiving back two signed copies of a document entitled "Cancellation of Purchase Agreement By and Between Portjeff Development Corp. (the "Seller") and Pierre Lavi (the "Purchaser")" ("Cancellation Agreement"). The letter sent Roeckl read:

> In connection with the above, please find two (2) original Cancellation of Purchase Agreements. Kindly have your client execute both Agreements and return same to my attention in the enclosed stamped, self-addressed envelope provided for his convenience. When I am in receipt of the Agreement I will then forward to your attention a check made payable to Pierre Lavi in the amount of $11,100.00 along with the two (2) Releases referred to in the Agreement. As agreed, you will hold said funds in escrow until I am in receipt of the signed Releases. When my client has executed the Agreements I will immediately forward one original to your attention.

(Lavi Exhibit B)

> The enclosed Agreement read, in part: The PURCHASE AGREEMENT entered into by and between SELLER and PURCHASER is hereby declared null and void ... and [the parties] agree that the monies being held in escrow by RIVKIN, RADLER, DUNNE & BAYH, (the "ESCROW AGENT"), shall be distributed as follows upon receipt of RELEASES executed by PURCHASER relieving SELLER and ESCROW AGENT from any and all liability:
> To the PURCHASER: $11,100.00
> To the SELLER: $4,500.00

(Lavi Exhibit B)

Although Lavi executed two copies of the Cancellation Agreement on January 4, 1989, as requested, and these were mailed to the Escrow Agent on January 19, 1989, Lavi was never sent the promised funds despite repeated requests, nor was he ever sent back a copy of the Cancellation Agreement executed by Portjeff.

On March 16, 1989 an involuntary petition was filed against Portjeff by its suppliers and materialmen. The proceeding was converted to Chapter 11 on April 17, 1989.

Three months after Portjeff went into bankruptcy it moved, pursuant to Section 365 of the Bankruptcy Code, to assume several of its purchase agreements, including its purchase agreement with Lavi. It moved to assume the agreements for the purpose of sale. The six purchase agreements covered were with: (1) Lavi; (2) John A. Sullo, Jr. and Elizabeth L. Sullo ("Sullo"); (3) Robert Konoski and Diana Konoski and Arthur Braverman and Barbara Braverman ("Konoski"); (4) Michael Fedrow and Maryann Fedrow ("Fedrow"); (5) Donna Bove–Hroch and Russell Hroch ("Hroch"); and (6) Bradley Polan ("Polan"). In each case the prospective purchaser, according to the moving papers, had provided the debtor with a deposit of ten percent, which deposit is being held in escrow.

All of the parties to each of the purchase agreements, except Sullo who defaulted, opposed assumption of his purchase agreement. Each purchaser claimed that his contract had been terminated or breached pre-petition and that he was entitled to the return of his deposit. Like the others, Lavi opposed assumption, he requested enforcement of the Settlement Agreement signed by him in January 1989.

On June 29, 1989, when Debtor's motion to assume the contract came on for hearing, Warren Graham, Esq. of AKO & O withdrew the motion with respect to Lavi and Hroch, adjourned it as to Konoski and Polan to July 19, 1989 and settled with Fedrow.

According to a letter dated December 11, 1989, which Mr. Roeckl subsequently wrote Nancy Shapiro, Esq. of AKO & O, Mr. Graham met with him on the return date of the motion and indicated "he had reviewed the situation and that our agreement was definitely prior to the bankruptcy situation

and that he would go ahead and get back to the office and make sure that this matter is taken care of and be paid." (Lavi Exhibit F) Mr. Roeckl attached to the motion papers a letter dated June 30, 1989 to Mr. Lavi from himself written the day following the court hearing in which he says:

Pursuant to conversation with Mr. Warren Graham from Mr. Olick's office and yourself in Court in the Eastern District Court of the Federal Bankruptcy Court on the 29th of June, 1989, this will advise that Mr. Graham has indicated, as you know, that he follow through with the settlement disposition in this matter, and I am to reach him as to the mechanics of working out the settlement on the 5th of July, or thereafter.

(Lavi Exhibit F)

On August 21st, Mr. Roeckl wrote AKO & O with respecting to working out the mechanics of payment to Mr. Lavi, he wrote again on September 6, 1989 and again on November 14, 1989, this time to Nancy Shapiro to whom he had been referred by Mr. Graham. None of these letters, including a letter written on December 11, 1989, brought Mr. Lavi any closer to receiving the return of his deposit.

The other parties to the other purchase agreements were more successful. As a result of Mr. Graham's corridor negotiations the Court signed an order on July 6, 1989, recognizing the contract between the Fedrows and Portjeff as terminated and directing the release to the Fedrows of their escrow of $17,500 "plus all applicable interest due thereon." (Document # 39, Order, dated July 6, 1989).

On July 19, 1989, the date to which the Debtor's motion to assume the various purchase agreements, to the extent it had not earlier been withdrawn, had been adjourned, was withdrawn in its entirety. Portjeff gave up its attempt to assume the various purchase agreements.

Nancy Shapiro, Esq., the same attorney to whom Mr. Graham had referred Roeckl, thereafter drew up and submitted three virtually identical "Stipulations and Orders" returning their deposits to Hroch, Polan and Konoski's assignee, Sherry. On September 15, 1989, this Court signed an Order, with the consent of the Creditors Committee, directing the return, with interest, to one Ellen Sherry of the deposit received from Konoski. On September 18, 1989, this Court signed an identical Stipulation and Order returning a deposit of $15,-100 to Hroch and on October 4, 1989, a $15,100 deposit went back to Polan. This meant that out of the six purchase agreements covered by Portjeff's motion to assume, the only purchasers who had not received their deposits back were Sullo, who had not responded to the motion to assume, and Lavi.

On May 2, 1990, RRD & B moved, somewhat belatedly, for an order authorizing and directing it to deliver to the attorney for the Creditors Committee various funds which it then held. It described as included within the funds the deposits it had received from contract vendees.[1]

Lavi opposed any transfer by RRD & B reciting his vain efforts to have the terms of the settlement agreement recognized. Based on the hearing before the Court and the decisions made at that hearing, the Order signed June 1, 1989 authorizing transfer of the moneys held by RRD & B to AKO & O provided:

Ordered that Pierre Lavi, having consented to the jurisdiction of the Bankruptcy Court to determine his right, claim and interest in and to any part of the Special Account, this Court shall determine the claims of Pierre Lavi to any part of the moneys in the Special Account.

This order was prepared by the attorneys for Norstar Bank, and was served on AKO & O, on the attorneys for the Creditors Committee, as well as on the United States

---

1. RRD & B said nothing in its application to transfer the money it was holding that some of the funds were being held by it as an escrow agent and, therefore, that what it was seeking to transfer was not only money but its fiduciary obligations as escrowee. Had it done so, the Court would have taken more care than it did to ensure that the transfer did not prejudice any purchasers.

Trustee, and no objections to it were received by the Court.

Roeckl's efforts to secure the return of his client's deposit were as fruitless after the transfer of the money to AKO & O as before. AKO & O did not refuse to return the money but put Roeckl off with the explanation that AKO & O was "attempting to negotiate a universal settlement of the entire matter" and pending AKO & O's ability to do so, AKO & O was unable to finalize the settlement of the matter involving Roeckl's client. (Letter, June 25, 1990, Mark Silverschotz, Esq. to Mr. Roeckl, Lavi Exhibit F).

On November 27, 1990, Roeckl brought on the present motion with the results already noted.

## DISCUSSION

 The deposits with the Escrow Agent by each of the purchasers, including Lavi, were trust funds and, therefore, never became the property of the debtor. Escrow funds remaining in possession of the debtor are held in trust and are not held for general creditors. *Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257, 261 (1st Cir.1963), *quoted in In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667–68 (Bankr. S.D.N.Y.1985). Property held in trust by the debtor is not part of the bankruptcy estate. *Begier v. I.R.S.*, — U.S. —, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *In re Mahan & Rowsey, Inc.*, 817 F.2d 682, 684 (10th Cir.1987); 4 Collier on Bankruptcy, ¶ 541.13 (15th Ed.1987).

*Begier v. I.R.S., supra*, is instructive. In that case, a Chapter 7 trustee brought a suit seeking to avoid as preferences debtor airline's pre-petition payments of trust fund taxes to the IRS. The Supreme Court held that the debtor's payment of withheld federal taxes collected from its customers were not transfers of "property of the debtor," but were instead transfers of property held in trust, and thus were not avoidable as preferences under Section 547. 110 S.Ct. at 2267.

Norstar which now objects to Lavi's motion on the ground that "the only effect of allowing payment to Mr. Lavi would be to prefer one unsecured pre-petition creditor over the others," earlier recognized, when represented by co-counsel that the deposits from contract vendees held by RRD & B as Escrow Agent did not belong to the Debtor and that the Debtor's unsecured creditors had no claim on such funds. On May 11, 1990, this Court received an "Affidavit in Opposition" signed by Charles G. Mills, counsel to Payne, Wood & Littlejohn, co-counsel to Norstar Bank, opposing RRD & B's motion to transfer the moneys it was then holding, including the deposits from contract vendees, to counsel for the Unsecured Creditors Committee. The affirmation read in part:

> It does not appear that any of the fund in question belongs to the debtor in possession and therefore the unsecured creditors have no claim to it.
>
> \* \* \* \* \* \*
>
> Virtually all the rest of the fund consists of deposits by contract vendees.
>
> Rivkin, Radler holds these deposits as escrowee to pay all or most of them to Norstar Bank when the units in question are released or to return them to the contract vendees if the sales fail to close through no fault of the contract vendees. Thus the unsecured creditors also have no interest in these funds.

 If, as Norstar Bank represented to this Court on May 9, 1990, unsecured creditors have no claim on the funds paid by contract vendees, its objection that Lavi is attempting to obtain preferential treatment over unsecured creditors is groundless. It is directly in conflict with the position Norstar earlier assumed in this Court. Norstar Bank was correct when it asserted that trust funds are not property of the debtor and that unsecured creditors have no claim on them. That being the case, no unsecured creditor will receive less if Lavi's motion is granted any more than he has received less because of the earlier moneys paid out to Fedrow, Hroch, Polan and Sherry.

 For similar reasons, the procedural objections that Mr. Lavi's motion is barred by the automatic stay of Section 362 have

little merit. Mr. Lavi is not trying to reach the debtor's property. It is important to bear in mind that AKO & O holds the money not as attorney for Portjeff, but as an Escrow Agent. In view of the history of this particular *res* in this Court and the circumstances under which it came into the control of AKO & O, Lavi is entitled to have his claim to a portion of that *res* determined here. Part of the order authorizing AKO & O to take possession of these funds was the assurance given Lavi that his claim to the fund would be decided by this Court.

■ There apparently is no dispute as to the facts on which Lavi relies, that is that as the result of mutual recognition pre-petition that his "Purchase Agreement" with Portjeff was not going to be carried out, he signed a document entitled "Cancellation Agreement" which he now seeks to enforce. His opponents, however, claim that this contract never became binding on Portjeff because it was never signed.

■ A contract, however, does not necessarily need a signature to be binding. Arguably, an offer was made to Lavi by the letter from Rumsky of RRD & B to Roeckl, dated December 22, 1988 which became binding on both parties when Lavi signified his acceptance by signing and returning the executed agreement to RRD & B. *Cf., Camrex Contractors v. Reliance Marine Applicators,* 579 F.Supp. 1420 (E.D.N.Y. 1984).

But accepting the position of Portjeff that the agreement to cancel never came into existence, then the Purchase Agreement remained alive, as Portjeff recognized when it tried to assume it. Under the Purchase Agreement, upon Portjeff's failure of performance, Lavi was entitled to the return of his deposit. This was not an obligation that Portjeff was free to assume or reject since it was the obligation of the Escrow Agent to return the money. The fact that the Escrow Agent is now the Debtor's attorney is immaterial to its obligations as a fiduciary.

When Portjeff was plunged into bankruptcy, Lavi's position in its essentials was no different from that of Fedrow, Hroch, Polan and Sherry. Yet he has received far different treatment because of his attorney's attempt to settle his claim. Had Roeckl insisted on having his objections to Portjeff's motion to assume his Purchase Agreement heard on June 29, 1989, instead of relying on the assurances he received from Mr. Graham, confirmed that day by Mr. Graham's withdrawal of the motion to assume the contract, the Court would not have authorized any different treatment for him from that received by Fedrow whose deposit was ordered returned.

While Portjeff and Norstar claim that to pay Lavi would be preferential treatment, the opposite is true. Persons similarly situated have already been preferred over him. "Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. I.R.S., supra,* 110 S.Ct. at 2262. That principle has been violated here. AKO & O has used its control over the funds required to be held in escrow for the contract vendees to prefer one contract vendee over another. There is nothing in the papers before this Court to explain or justify that disparity in treatment.

Various aspects of this matter still remain in obscurity. For their clarification, a full evidentiary hearing would be necessary, which the parties have not sought and do not appear to be inviting. If the parties elect to forgo such evidentiary hearing, Lavi is entitled, at the very least, to the money he was willing to accept on January 19, 1989.

The Court will dispense with an evidentiary hearing if AKO & O manifests its consent to repaying Lavi $11,100, plus interest from January 19, 1989, by settling an order authorizing such repayment on terms similar to those contained in the orders signed with respect to the other contract vendees. The order should provide that it will be signed unless written objections are received by the Court within ten days of the date of service. In that event an evidentiary hearing will be held on April 30, 1991 at 12:00 noon before the undersigned in the United States Bankruptcy

Courthouse, 601 Veterans Memorial Highway, Hauppauge, New York.

If such an order is not noticed for settlement and submitted to this Court by AKO & O within ten days of this decision, this Court will issue its own Order to Show Cause to all interested parties setting the present motion down for an evidentiary hearing. The Order to Show Cause will, among other things, require AKO & O to show cause why Lavi should not receive back his entire deposit of $15,600, just as have Fedrow, Hroch, Polan and Sherry.

The foregoing constitutes the decision of this Court.