In re **KENSTON MANAGEMENT CO., INC.,** Debtor.

**KENSTON MANAGEMENT CO., INC.,** Plaintiff,

v.

**LISA REALTY CO., George Tassone, Salvatore Tassone, Vickie Tassone, and George Tassone, Jr., Poseidon Development Corp., Rose Marketing Corp., Poseidon Pools, Inc.,** Defendants.

Bankruptcy No. 188–83014–260. Adv. No. 191–1277.

United States Bankruptcy Court, E.D. New York.

March 4, 1992.

**102**

Harvis, Trien & Beck by Gary Ginsburg, New York City, for debtor.

Parker, Chapin, Flattau & Klimpl by Philip H. Kalban, New York City, for defendants.

## DECISION ON MOTION FOR SUMMARY JUDGMENT SEEKING TO DISMISS THE DEBTOR'S COMPLAINT AND TO IMPOSE SANCTIONS

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which Kenston Management Co., Inc., the debtor and debtor-in-possession, ("Kenston" or the "Debtor") is the Plaintiff wherein it seeks a declaratory judgment against Lisa Realty

Co., George Tassone, Salvatore Tassone, Vickie Tassone, George Tassone Jr., Poseidon Development Corp., Rose Marketing Corp., and Poseidon Pools, Inc., (the "Defendants") pursuant to a Stipulation of Settlement approved by this Court on July 24, 1990.

This matter came before this Court on the Defendants' motion for summary judgment seeking to dismiss the Debtor's complaint pursuant to Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056, and for sanctions against the Debtor pursuant to Fed. R.Bankr.P. 9011 and Fed.R.Civ.P. 11. After reviewing the documents on file in this Court and for the reasons stated below, the Defendants' motion for summary judgment is granted and the motion to impose sanctions is denied.

### FACTS

On October 31, 1988 the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Prior thereto, the Debtor brought an action against Poseidon Pools of America, Inc. ("Poseidon"), S & V Pools and the Defendants in the Civil Court of the City of New York, County of Kings (Index No. 110239/88), for monies due from Defendants under a lease agreement. The lease was between the Debtor and one of the Defendants, Lisa Realty Co., and was guaranteed by the other Defendants. During the course of the pre-petition litigation, a judgment was entered in favor of the Debtor against all of the defendants in that action. In seeking to set aside the judgment, the Defendants were required to post a bond. Shortly after re-opening the judgment and posting the bond, the Debtor filed its Chapter 11 petition.

During the Chapter 11 case, the Debtor's principal, John Luhrs, engaged in settlement discussions with the principals of the Defendants herein. On June 22, 1990, the Debtor executed a Stipulation of Settlement (the "Stipulation" or the "Agreement") with Poseidon and various subsidiaries of Poseidon, namely: Poseidon Development Corp., S & V Pools, Inc., Poseidon Pools, Inc., and Rose Marketing Corp.

(the "Poseidon Subsidiaries"). Pursuant to the terms of the Stipulation, the Debtor was to dismiss, with prejudice, all State Court actions commenced against Poseidon, the Poseidon Subsidiaries and Lisa Realty Co., George Tassone, Salvatore Tassone, Vickie Tassone, and George Tassone, Jr. (the "Non–Poseidon Defendants") by an exchange of general releases. The Stipulation was approved by an Order of this Court on July 24, 1990.

The Stipulation provides for the payment of $375,000.00 to be made to the Debtor in full settlement of all claims that the Debtor may have against Poseidon, the Poseidon Subsidiaries, and the Non–Poseidon Defendants. The $375,000.00 settlement would include a lump sum payment of $275,000.00 and ten subsequent monthly payments of $10,000.00 each.

The Stipulation further provides that:

In the event of a default in payment under this agreement, the non-defaulting party ... is authorized to confess judgment for the unpaid balance under this agreement against the obligor hereunder without further notice before any court of competent jurisdiction within the State of New York or the Commonwealth of Pennsylvania.

Pursuant to the Stipulation and in reliance upon the full payment being made thereto, the Debtor executed and delivered general releases in favor of Poseidon, the Poseidon Subsidiaries, and the Non–Poseidon Defendants. The lump sum payment of $275,000.00 and two monthly installments amounting to $20,000.00 were timely made to the Debtor on or about October 18, 1990 and November 18, 1990 for a total of $295,000.00. In light of these advances, a balance of $80,000.00 remains due. More specifically, the monthly installments of $10,000.00 due on December 18, 1990, January 18, 1991, February 18, 1991, March 18, 1991 and April 18, 1991, under the terms of the Stipulation, have not been made.

On February 15, 1991, Poseidon and certain of its subsidiaries, including S & V Pools, Inc., filed petitions for relief under Chapter 11 of the Code in the United States Bankruptcy Court for the Southern District

of New York. As a result, the automatic stay prohibits the Debtor from commencing an adversary proceeding against Poseidon and S & V Pools, Inc.[1] However, the Poseidon Subsidiaries, as well as, the Non-Poseidon Defendants, have not sought protection under the Bankruptcy Code and, therefore, the provisions of the automatic stay do not apply.

On May 17, 1991, the Debtor commenced this adversary proceeding against the Poseidon Subsidiaries and the Non–Poseidon Defendants pursuant to Fed.R.Bankr.P. 7001(1) and Section 542(b) of the Bankruptcy Code seeking a declaratory judgment and to compel the turnover of $80,000 to the Debtor's estate. Furthermore, the Debtor asserts that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2).

In opposition, the Defendants filed the instant motion for summary judgment to dismiss the Debtor's complaint and to impose sanctions against the Debtor for commencing a frivolous action. The Defendants claim that this Court is without subject matter jurisdiction, and that pursuant to the Stipulation of Settlement, the $80,-000 in arrears is solely the contractual obligation of Poseidon Pools of America, Inc.

## DISCUSSION

### Subject Matter Jurisdiction

Section 157(b)(1) of Title 28 of the United States Code confers on the federal bankruptcy court jurisdiction to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b)(1). Pursuant to this section, a bankruptcy court "may enter appropriate orders and judgments." *Id.*

Section 157(b)(2) provides in pertinent part:

Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

.  .  .  .  .

(E) orders to turn over property of the estate; [and]

.  .  .  .  .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....

28 U.S.C. § 157(b)(2). In addition, the bankruptcy court is the proper forum to bring a motion to determine whether a proceeding is core or non-core. Pursuant to 28 U.S.C. § 157(b)(3), "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is otherwise related to a case under Title 11." 28 U.S.C. § 157(b)(3).

■■■ The mere characterization of an adversary proceeding within the terms included as core in 28 U.S.C. §§ 157(b)(2)(A)–(O) will not be dispositive of whether the proceeding is core. *In re General American Communications Corp.*, 130 B.R. 136, 155 (S.D.N.Y.1991). Furthermore, the fact that the resolution of some action may turn on the application of state law will not, in and of itself, turn the adversary proceeding into a non-core proceeding. *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper)*, 896 F.2d 1394, 1400 (2d Cir.1990); *Mann v. Kreiss (In re Kreiss)*, 58 B.R. 999, 1004 (E.D.N.Y.1986). The legislative history of section 157 "indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that ninety-five percent of the proceedings brought before bankruptcy judges would be core proceedings." *Ben Cooper*, 896 F.2d at 1398 (quoting *In re*

---

1. Section 362(a)(1) states in pertinent part:
   (a) a petition filed under section 301, 302 or 303 of this title ... operates as a stay applicable to all entities, of—
   (1) the commencement or continuation, including the issuance or employment of

process, of a[n] ... action or proceeding against the debtor ... or to recover a claim against the debtor that arose before the commencement of the case under this title....
   11 U.S.C. § 362(a)(1).

*Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987)).

The Defendants argue that the Debtor's claim does not constitute a core proceeding in that it is based on state law. However, the statutory language expressly maintains that a case should not be deemed a non-core proceeding simply on this basis. 28 U.S.C. § 157(b)(3). Section 157(b)(3) clearly provides that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.* "The relevant inquiry is whether [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384, 1389 (2d Cir.1990).

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court considered constitutional restraints on bankruptcy court jurisdiction. The plurality distinguished those issues "at the core of the federal bankruptcy power ... from the adjudication of state-created private rights." *Id.* at 71, 102 S.Ct. at 2871.

> [T]he adjunct bankruptcy courts created by the Act [1978, 28 U.S.C. § 1471] exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowell [Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ] or *Raddatz [United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), *reh denied United States v. Raddatz,* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980) ].

*Marathon,* 458 U.S. at 86, 102 S.Ct. at 2879. As one court interpreted *Marathon:*

> [T]he constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state

law cause of action and the bankruptcy estate.

*In re Lion Capital Group,* 46 B.R. 850, 856 (Bankr.S.D.N.Y.1985), *aff'd,* 63 B.R. 199 (S.D.N.Y.1986). *See also, Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d Cir.1983); *In re Kreiss,* 58 B.R. 999, 1005 (Bankr.E.D.N.Y.1986); *In re Satelco,* 58 B.R. 781, 786 (Bankr.N.D.Tex.1986); *Lipshie v. AM Cable TV Industries (In re Geauga Trenching Corp.),* 110 B.R. 638, 644–45 (Bankr.E.D.N.Y.1990); *General American Comm.,* 130 B.R. at 155.

> *Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court (i.e., 'related proceedings').... [I]n no way did *Marathon* implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction. The Court's invalidation of the jurisdictional grant was on separability grounds, not on the grounds that bankruptcy courts could not adjudicate traditional bankruptcy matters.

*Kaiser,* 722 F.2d at 1580. In *Marathon,* however, the adversary proceeding involved not only a pre-petition contract, but a pre-petition breach of that contract. *In re West Electronics, Inc.,* 128 B.R. 900, 903 (Bankr.D.N.J.1991); *In re Blue Point Carpet, Inc.,* 86 B.R. 327 (Bankr.E.D.N.Y. 1988).

In *In re Ben Cooper,* 896 F.2d 1394, the Second Circuit found that the point at which a claim arises is a critical element in determining whether a proceeding is core or non-core. A "post-petition complaint that has as its subject matter an estate asset must be analyzed differently than one arising pre-petition." *Id.* at 1399. Moreover, "the timing of a dispute may render it uniquely a bankruptcy case." *Id.* at 1400. The court distinguished its holding from the Supreme Court's decision in *Marathon. Id.*

A majority of the courts have recently indicated a narrow reading of *Marathon* is necessary and that a party's post-petition contract dispute with a debtor-in-possession

is a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), "matters concerning the administration of the estate," (b)(2)(E), "orders to turn over property of the estate," or, (b)(2)(O), "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...." *Ben Cooper*, 896 F.2d 1394 (held post-petition contract is core; rejects *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986) and *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). *See eg., Arnold Print Works*, 815 F.2d at 168 (DIP's post-petition action to collect a post-petition account receivable was a core matter); *In re Pester Refining Co.*, 66 B.R. 801, 817–18 (Bankr.S.D. Iowa 1986) (conversion claim brought by estate against a pre-petition creditor was core), *aff'd, In re Pester Refining Co.*, 85 B.R. 520 (S.D. Iowa 1987), *aff'd in part and rev'd in part*, 845 F.2d 1476 (8th Cir.1988); *Edgcomb Metals Co. v. Eastmet Corp*, 89 B.R. 546, 554 (D.Md.1988) (buyer who knowingly contracts with a DIP is deemed to have consented to Bankruptcy Court's jurisdiction, and a suit on a post-petition contract with DIP is a core matter); *Hershman v. Thorne, Grodnik & Ransel (In re Stockert Flying Service, Inc.)*, 74 B.R. 704, 708 (N.D.Ind.1987) (creditor's claim against debtor's attorney for mishandling debtor's estate assets was a core matter). *See also, In re Associated Grocers of Colorado, Inc.*, 97 B.R. 39, 41 (Bankr.D.Colo.1989) (post-petition accounts receivable was core); *Bass v. Millican (In re Telemarketing Communications)*, 95 B.R. 794 (Bankr. D.Colo.1989) (debtor's damage action which arose out of a post-petition contract for the sale of assets was core); *In re Standard Metals Corp.*, 97 B.R. 593, 596 (Bankr. D.Colo.1988) (post-petition contract dispute over sale of major asset to fund debtor's reorganization was core); *Meininger v. Swasey (In re Sarasota Casual, Inc.)*, 90 B.R. 496, 498 (Bankr.M.D.Fla.1988) (trustee's action for breach of post-petition contract was core); *Germain v. Connecticut National Bank (In re O'Sullivan's Fuel Oil Co., Inc.)*, 88 B.R. 17, 20 (D.Conn.1988) (Chapter 7 trustee's action against a bank under causes of action that occurred pre-dominately post-petition was core); *In re J.B. Van Sciver Co.*, 73 B.R. 838, 844 (Bankr.E.D.Pa.1987) (action for breach of Court approved post-petition real estate sales agreement was core); *Canadian Shield Financial Corp. Ltd. v. Estate of Deutscher (In re Vincent)*, 68 B.R. 865, 869 (Bankr.M.D.Tenn.1987) (state law claims against officer created by plan of reorganization was core); *In re National Equipment and Mold Corp.*, 71 B.R. 24, 27 (Bankr.N.D. Ohio 1986) (Chapter 7 trustee's assumption of an action previously brought by the DIP on a post-petition claim to recover funds placed in escrow as part of a contemplated loan under reorganization that did not materialize was core); *In re Gray Line of Boston, Inc.*, 62 B.R. 811, 813 (Bankr.D.Mass.1986) (dispute over terms of a Court ordered stipulation on a post-petition lease agreement was core). *But see, In re Kolinsky*, 100 B.R. 695, 702 (Bankr.S.D.N.Y.1989) (action to rescind a post-petition contract for sale of real property by non-debtor corporation wholly owned by debtor was not a core proceeding but was "related to" and within the court's jurisdiction).

Similarly, in *In re Arnold Print Works, Inc.*, 815 F.2d 165, a matter concerning a post-petition action arising from the sale of assets of the debtor's estate which was held to be a core proceeding, the court observed that:

> [a] party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its prepetition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.

*Id.* at 170.

Accordingly, this Court will consider whether the present adversary proceeding

is a matter concerning an order to turn over property of the estate, therefore permitting the bankruptcy court jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(E).

■ The requirement that property of the estate be turned over to the debtor is subject to § 542 of the Bankruptcy Code. Pursuant to § 542(b), "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee" or the debtor-in-possession. 11 U.S.C. § 542(b). Whether a claim can be described as a matured debt depends on whether it is "specific in its terms as to amount due and date payable." *In re Allegheny Inc.*, 68 B.R. 183, 190 (Bankr.W.D.Pa.1986); *In re F & L Plumbing and Heating Co., Inc.*, 114 B.R. 370, 376 (E.D.N.Y.1990). The inclusion of the phrase "to turn over property of the estate" in § 157(b)(2)(E) evinces Congress' intention to include all proceedings that may be brought pursuant to § 542 as core proceedings. *In re Leco Enterprises*, 125 B.R. 385, 390 (S.D.N.Y.1991).

■ In the present case, the Debtor's complaint, pursuant to Fed.R.Bankr.P. 7008(a),[2] identifies the action as a core proceeding in that the Debtor is seeking to recover monies due pursuant to a Stipulation of Settlement. *See In re Gray Line of Boston, Inc.*, 62 B.R. 811 (Bankr.D.Mass. 1986) (adversary proceeding which concerns the terms of a Stipulation which was so ordered by the court is a core matter). Notwithstanding the Debtor's claim, this Court "is required to look behind the char-

acterization, and analyze the true nature of the relief sought." *F & L Plumbing*, 114 B.R. at 376 (quoting *In re Northeast Diary Cooperative Federation, Inc.*, 72 B.R. 663, 675 (Bankr.N.D.N.Y.1987)).

Pursuant to the Stipulation, a confession of judgment may be entered against the defaulting party for the then unpaid balance of the agreement against the obligor.[3] The Poseidon Defendants acknowledge that the obligor has failed to meet its obligation to pay the final eight installments, aggregating $80,000.00, and therefore, the Debtor is entitled to a confession of judgment. However, the Defendants argue that this debt is solely the contractual obligation of Poseidon Pools of America, Inc., which had filed a petition for relief in the Southern District of New York and is currently under the protection of the automatic stay.

To the extent that the Debtor is seeking a declaratory judgment in the amount of $80,000.00 in accordance with the default provision of the Stipulation, the instant adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) which is matured, payable on demand or order, and for a sum certain pursuant to § 542 of the Code. *Leco*, 125 B.R. at 390. The fact that there is a question as to whether all of the Defendants are liable, does not change the fact that the debt is matured and subject to a core proceeding. *Id.; Allegheny*, 68 B.R. 183. In other words, "for an action to be a turnover proceeding, it is not relevant that [all] the defendant[s] dispute the existence of the debt by, perhaps, denying the complaint's allegations, as long as

---

2. Fed.R.Civ.P. 7008(a) states in pertinent part:

(a) Applicability of Rule 8 F.R.Civ.P. Rule 8 F.R.Civ.P. applies in adversary proceedings.... In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core....

Fed.R.Bankr.P. 7008(a).

Fed.R.Civ.P. 8 states in pertinent part:

(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party clam, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court

already has jurisdiction and the claim needs no new grounds of jurisdiction to support it....

Fed.R.Civ.P. 8(a).

3. Paragraph 3 of the Stipulation of settlement provides that:

In the event of any default in payment under this agreement, the non-defaulting party must send notice of such default.... If said default is not cured within fifteen (15) days of receipt of said notice, the non-defaulting party is empowered and authorized to confess judgment for the then unpaid balance under this agreement against the obligor hereunder without further notice....

these allegations state the existence of a mature debt." *In re National Enterprises, Inc.*, 128 B.R. 956, 959 (E.D.Va.1991). Therefore, this turnover proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) in that the debt owed to the Debtor is a matured debt within the meaning of § 542(b). *See Acolyte Electric Corp. v. New York*, 69 B.R. 155 (Bankr. E.D.N.Y.1986), *aff'd* No. 86–0329, 1987 WL 47763 (E.D.N.Y. March 27, 1987) (a turnover proceeding is considered a core proceeding under § 542(b) when its purpose is the collection rather than the creation of a matured debt).

Motion for Summary Judgment

■■ A motion for summary judgment is governed by Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056, which provides in pertinent part:

> [T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56. In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastman Machine Company, Inc. v. United States*, 841 F.2d 469 (2d Cir.1988); *In re Sapru*, 127 B.R. 306, 319 (Bankr.E.D.N.Y. 1991). The court must deny summary judgment where there is a genuine issue as to any material fact, and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson*, 477 U.S. at 247–52, 106 S.Ct. at 2506–11; *Hamilton v. Smith*, 773 F.2d 461, 466 (2d Cir. 1985).

■■ The movant bears the burden of proving the absence of any genuine issue as to all material facts which entitle it to summary judgment. *Sapru*, 127 B.R. at 319; *F & L Plumbing*, 114 B.R. at 374. Once this initial burden is met, the opposing party must not only set forth specific facts showing there is a genuine issue for trial, but also that the disputed fact is material. *General American Comm.*, 130 B.R. at 152; *F & L Plumbing*, 114 B.R. at 374. Therefore, the opposing party may not merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position. *General American Comm.*, 130 B.R. at 152. *See also First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *United States v. Pent-R-Books, Inc.*, 538 F.2d 519 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

■■ In addition, when determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As the Supreme Court in *Anderson v. Liberty Lobby, Inc.* stated:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other[,] but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it...". *Improvement Co. v. Munson*, 14 Wall. 442, 448 [20 L.Ed. 867] (1872).

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. From the pleadings and supporting memoranda filed in this proceeding, it is

this Court's conclusion that there is no genuine issue of material fact.

### Non-parties to the Stipulation of Settlement

■ The Defendants assert that the complaint fails to state a claim for relief against the Non–Poseidon Defendants who are not parties to the Stipulation and do not have a continuing obligation to the Debtor. In opposition to the present motion, the Debtor argues that inasmuch as the Non–Poseidon Defendants are seeking to benefit from the general release, they are bound by the Stipulation, and therefore, are liable under its terms.

This Court has held that a contract does not necessarily need a signature to be binding. *In re Portjeff Dev. Corp.*, 128 B.R. 38, 44 (Bankr.E.D.N.Y.1991). "A written contract need not be signed to be binding against a party, so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract." *Allen v. National Video, Inc.*, 610 F.Supp. 612, 631 (S.D.N.Y. 1985), (citing, 1 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 90A, at 291–293 (3rd ed. 1957)); *Compare Joseph v. Atlantic Basin Iron Works, Inc.*, 132 N.Y.S.2d 671, 673 (N.Y.Sup.Ct.1954), *aff'd*, 285 A.D. 1147, 143 N.Y.S.2d 601 (N.Y.App.Div.1955) (accepting and performing work called for in a purchase order indicated acquiescence to the contract) *[and] Al–Salamah Arabian Agencies Com., LTD. v. Reece*, 673 F.Supp. 748, 750 (M.D.N.C.1987) (parties performance pursuant to the terms of the contract prior to the defendants signing it required enforcement of the contract) *with In re Gaynes*, 27 B.R. 161, 162 (BAP 9th Cir. 1983) (debtor did not establish a breach of contract where neither a signature nor subsequent validating conduct existed to support enforcement of the document as a binding agreement).

Pursuant to the terms of the Stipulation, Poseidon and its subsidiaries were to pay to the Debtor the aggregate sum of $375,000.[4] The Non–Poseidon Defendants were not designated to pay any part of the $375,000 to the Debtor, nor has the Debtor brought forth proof that any monies were actually paid by them. In addition, the Non–Poseidon Defendants did not perform any other act to demonstrate their intention to adopt the Stipulation.

The Debtor claims that the Non–Poseidon Defendants are liable in that they are all seeking to benefit from the general release which flows from the Stipulation. In *Skelton v. General Motors Corp.*, 860 F.2d 250, 259 (7th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), the Court held that "a party may become bound to a contract by accepting its benefits, even though he did not sign [the contract]." In *Skelton*, however, although the benefitted party never signed the agreement, he did follow its procedures. *Id.* at 259. In the case before this Court, even though the Non–Poseidon Defendants did benefit from the general release, they did not perform any act in compliance with the terms of the Stipulation. The Debtor's complaint fails to state a claim for relief for breach of contract against the Non–Poseidon Defendants who are not parties to the Stipulation. Therefore, the Debtor may not hold them liable for any defaults incurred thereunder.

### Parol Evidence

■ On May 24, 1990, John Luhrs, Esq., the Debtor's principal, freely executed an unconditional general release which ran from Kenston to the Defendants. Mr. Luhrs delivered this release to the Defendants' attorney Philip Kalbin, Esq. In connection with this release, Mr. Kalbin drafted a Stipulation of Settlement which the Debtor's principal John Luhrs freely executed.

---

4. Paragraph 2 of the Stipulation states in pertinent part:

   2. No later than fifteen (15) days after the discontinuance with prejudice of all actions, ..., Poseidon Pools of America, Inc. and the Subsidiaries shall pay to Kenston the sum of $275,000. Commencing thirty days after the date of such payment, and on such day of the month for the following nine consecutive months, Poseidon Pools of America, Inc. shall pay to Kenston the sum of $10,000, for an aggregate of $100,000 in monthly payments.

The parties now disagree as to whether they intended the release to be effective upon the initial payment of $275,000 or upon payment of $375,000.00, the full amount of the settlement.[5] Despite the absence of language in the Stipulation or the general release to support its contention, the Debtor claims that the executed general release was to have been held in escrow by the Defendants' attorney pending execution of the Stipulation of Settlement, the approval of the bankruptcy court, and full payment under the Stipulation's terms.

■■■ The Debtor's contention that parol evidence should be admitted to void the release of the Defendants as "prematurely delivered" lacks merit. A release is merely a type of contract, "and as such, its construction is to be governed by the same principles of law applicable to other contracts." *Record v. Royal Globe Ins. Co.*, 83 A.D.2d 154, 158, 443 N.Y.S.2d 755, 757 (2d Dep't 1981); *Mangini v. McClurg*, 24 N.Y.2d 556, 562, 249 N.E.2d 386, 390, 301 N.Y.S.2d 508, 512 (1969).

Although the Debtor's principal alleged in his affidavit that the Stipulation was to contain, in its final clause, language which would "strongly imply that the release would not be co-effective as between the parties until after consummation of the entire Stipulation," (Luhrs Aff. ¶ 6), the actual final clause of the Stipulation merely stated that: "Poseidon Pools of America, Inc., Poseidon Development Corp., Poseidon Pools, Inc., S & V Pools, Inc., Rose Marketing Corp., Lisa Realty Co. and George Tassone shall exchange general releases with Kenston and John Luhrs." (Stipulation ¶ 4). Contrary to the Debtor's claim, this Court finds the language of the Stipulation to be unambiguous and unconditional. If the Debtor intended the release to be held in escrow until payment was received in full, then the Debtor should have either included an explicit condition in the Stipulation to that effect, or ensured the vagueness of the Stipulation in order to leave it open for parol evidence.

The Debtor claims to have refrained from including explicit conditions in the Stipulation because the Defendants' bonding company would not fund the Defendants' payment of $275,000.00 until the Debtor issued an unconditional release. Furthermore, the Debtor contends that it relied on this secret agreement between itself and the Defendants and that it allegedly would not have delivered the release to Mr. Kalbin had the Debtor been aware that Kalbin intended to follow the plain language of the Stipulation by delivering the Debtor's release to the Defendants upon the initial payment of $275,000.00. Cognizant of the public policy interest against upholding secret agreements, such as the alleged oral condition to the Debtor's release, this Court would leave the parties as it found them. *See Weil v. Neary*, 278 U.S. 160, 173–74, 49 S.Ct. 144, 149, 73 L.Ed. 243 (1929); *see also In re Tampa Chem. Co.*, 35 B.R. 568, 579 (Bankr.S.D.N.Y.1983). This Court finds that since this was a Stipulation between parties of approximately equal bargaining power, the parties are equally responsible for the language of the Stipulation. Accordingly this Court need not determine the truth of the alleged oral agreement in order to grant the Defendants' motion.

■■■ Furthermore, in a motion for summary judgment, "[w]hen the words of the release are of general effect the release is to be construed most strongly against the releasor ... and the burden rests upon the releasor to establish that general language of the release was not meant to be general." *Continental Casualty Co. v. Tillotson*, No. 83 CIV. 8132(GLG), 1984 WL 676,

---

**5.** Although the Debtor originally implied in its complaint that the release was void for lack of consideration, the Debtor subsequently admitted that pursuant to N.Y. General Obligations Law § 15–303, the general release cannot be invalidated for want of consideration. N.Y. General Obligations Law § 15–303 states in pertinent part:

A written instrument which purports to be a total or partial release of all claims, debts, demands ... shall not be invalid because of the absence of consideration.
23A McKinney's N.Y. General Obligation Law § 15–303 (1991).

at *3 (S.D.N.Y. Aug. 3, 1984) (quoting *Mt. Read Terminal, Inc. v. LeChase Constr. Corp.*, 58 A.D.2d 1034, 1035, 396 N.Y.S.2d 959, 960 (4th Dep't 1977)). Therefore, in the case before this Court the release will be construed against the Debtor.

▮ The Court further notes that when, as here, an unambiguous release[6] is signed knowingly and voluntarily in a commercial context by parties in a roughly equal bargaining position with access to counsel, the general rule is that the language of the release indicates the intent of the parties. *Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1114 (2d Cir.1977); *See Appel v. Ford Motor Co.*, 111 A.D.2d 731, 732, 490 N.Y.S.2d 228, 229 (1985). The language of the release in the present case makes it clear that the Debtor has released the Defendants of all claims. If the release was intended to entail a condition precedent, then its wording should have so indicated. *Jerry's Gen. Contracting Serv., Inc. v. The Philippines*, No. 86 Civ. 3266(PKL), 1987 WL 16369, at *2 (S.D.N.Y. Aug. 21, 1987).

▮ Whereas this Court finds the release is clear and unambiguous on its face, the parol evidence rule excludes "extrinsic evidence of prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of [the] writing." *Marine Midland Bank–Southern v. Thurlow*, 53 N.Y.2d 381, 387, 425 N.E.2d 805, 807, 442 N.Y.S.2d 417, 419 (1981); *See also G.S.C. Holding Corp. v. Cervoni*, 69 A.D.2d 809, 810, 415 N.Y.S.2d 57, 59 (2d Dep't 1979).

In addition, this Court recognizes that releases play a crucial role in the resolution of disputes. A release is a "jural act of high significance without which the settlement of disputes would be rendered all but impossible." *Mangini*, 24 N.Y.2d at 563,

249 N.E.2d at 391, 301 N.Y.S.2d at 513. As such, a release "should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice." *Id.*

▮ "the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake, must be established or else the release stands." *Id.* The Debtor has failed to meet its burden of proof and has not shown any compelling reason for this Court to disturb the strong public policy interest in preserving freely negotiated releases. *Id.* The Debtor's reliance on *In re M & M Transp. Co.*, 13 B.R. 861 (Bankr. S.D.N.Y.1981), to support the contention that equity requires this Court to void the release is unpersuasive. To the contrary, *M & M Transp.* presents a compelling argument in favor of Defendants' motion for summary judgment by declaring that:

> Equity should not intrude itself where knowledgeable parties contract and where they have not been overborne by actions of the other party.... [t]he stability of the process and the public policy inherent in upholding the validity of freely negotiated contracts outweigh the call to do equity merely because the defendants find less [than they had hoped to find.]

*Id.* at 868.

The Debtor further alleges that parol evidence is necessary to enable this Court to determine the parties liable under the terms of the Stipulation of Settlement. More specifically, the Debtor claims that its intention was not to renounce its right to pursue payment of the remaining $100,-000.00 from the Non–Poseidon Defendants upon the initial payment of the $275,000.00

---

**6.** In relevant part, the debtor's release of the defendants states that:

> Kenston Management Co., Inc ... as RELEASOR, received from Poseidon Pools of America, Inc. and subsidiaries, Poseidon Development Corp., S & V Pools, Inc., Rose Marketing Co., Inc., Lisa Realty Co., George Tassone, Salvadore Tassone, Vickie Tassone, and George Tassone, Jr., as RELEASEE, receipt

> whereof hereby acknowledged, releases and discharges the RELEASEE ... from all causes of action, suits, debts, dues, sums of money ... claims, and demands whatsoever, in law, admiralty, or equity, which against the RELEASEE, the RELEASOR ever had ... form the beginning of the world to the day of the date of this RELEASE.... This RELEASE may not be changed orally.

and the execution of the unconditional general release.

■ However, this Court finds that the Debtor's claim that parol evidence should be admitted lacks merit. "It is axiomatic that where the language of an agreement is explicit and unambiguous the courts must give it its plain meaning." *Omaha Indemnity Company v. Johnson & Towers, Inc.*, 599 F.Supp. 215, 218 (E.D.N.Y. 1984). Furthermore, "parol evidence is admissible to aid in interpretation of a contract only when the language of the contract is ambiguous." *Burger King Corporation v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir.1990); *see International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir.1989); *Namad v. Salomon, Inc.*, 74 N.Y.2d 751, 753, 545 N.Y.S.2d 79, 80–81, 543 N.E.2d 722, 723 (1989). A contract is ambiguous if it is reasonably susceptible to various interpretations, which is determined by reference to the terms of the contract alone. *Id.* at 527 (*citing Curry Road, Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990); *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572–73, 489 N.E.2d 231, 233, 498 N.Y.S.2d 344, 346 (1986); *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 355 (1978)); *see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 734 & n. 9 (2d Cir.1984) (disagreeing with trend toward making contextual inquiry to determine whether language is ambiguous).

Although the Debtor alleges that the parties intended to have paragraph 2 read in connection with the Stipulation in its entirety, the terms of the paragraph are definite and provide that:

> [n]o later than fifteen (15) days after the discontinuance with prejudice of all actions, ... Poseidon Pools of America, Inc. and the Subsidiaries shall pay to Kenston the the sum of $275,000. Commencing thirty days after the date of such payment and on such day of the month for the following nine consecutive months, *Poseidon Pools of America, Inc. shall pay to Kenston the sum of $10,000 in monthly payments.* (emphasis added).

Pursuant to the Stipulation, paragraph 2 specifically mandates that "Poseidon Pools of America, Inc. and the Subsidiaries shall pay to Kenston the sum of $275,000" and that "Poseidon Pools of America, Inc. shall pay to Kenston the sum of ... $100,000 in monthly payments."

This Court finds the Stipulation of Settlement to be clear and unambiguous on its face, and accordingly, "extrinsic (parol) evidence regarding the terms of the agreement [are] properly excluded in light of the absence of any ambiguity." *Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 828 (2d Cir.1990). *See Cibro Petroleum Products, Inc. v. Sohio Alaska Petroleum Co.*, 602 F.Supp. 1520, 1545 (N.D.N.Y.1985) (stating general contracts principle that if contract is unambiguous, extrinsic evidence should be excluded), *aff'd per curiam*, 798 F.2d 1421 (Temp.Emer.Ct.App.), *cert. dismissed*, 479 U.S. 979, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986); *Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157, 468 N.Y.S.2d 649, 654 (2d Dep't. 1983) (reference to extrinsic evidence not permitted even to determine whether ambiguity exists in contract).

### Sanctions

■ Fed.R.Bankr.P. 9011 governs the imposition of sanctions in bankruptcy proceedings and provides in pertinent part:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented

party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

In addition, given the identity of Fed. R.Bankr.P. 9011 and Fed.R.Civ.P. 11, this Court must be guided by the decisions construing the latter. *In re Food Workshop, Inc.,* 70 B.R. 962, 965 (Bankr.S.D.N.Y. 1987); *In re Omega Trust,* 120 B.R. 265, 270 (S.D.N.Y.1990). If a paper is signed in violation of Rule 11, the court is required to impose an appropriate sanction. *Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir.1991). An objective standard is employed in the imposition of sanctions pursuant to Fed.R.Civ.P. 11. *Food Workshop,* 70 B.R. at 965.

> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

■ The purpose of this rule is to deter tactics that abuse the litigation process. *See e.g., Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584 (3rd Cir.1985) (Bankruptcy Court imposed sanctions upon finding that petition had been filed for purpose of delay and not reorganization); *Cohoes Industrial Terminal, Inc. v. Latham Sparrowbush Assoc. (In re Cohoes Industrial Terminal, Inc.),* 931 F.2d 222 (2d Cir.1991) (sanctions should be imposed where filing was frivolous and for purpose of delay and not reorganization). While Fed.R.Bankr.P. 9011 and Fed.R.Civ.P. 11 places an affirmative duty on an attorney to "conduct a 'reasonable inquiry' into factual and legal bases of a claim before endorsing a pleading," it should not be applied in such a way so as to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Melli, S.N.C. v. C. Miller, Inc.,* No. 85 Civ. 9544–CSH, slip. op. at 1, 1986 WL 13804 (S.D.N.Y. Nov. 26, 1986); *Eastway Construction,* 762 F.2d at 254.

■ In the case before this Court, the Debtor asserts it commenced this adversary proceeding based on an honest interpretation of the Stipulation of Settlement which would establish that the release was prematurely delivered to the Defendants prior to the final full payment. The Debtor relied upon an oral agreement that the Stipulation was to contain language, in the form of a final clause, pertaining to the exchange of the release so as to strongly imply that the release would not be effective as between the parties until after consummation of the preceding clauses of the Stipulation. In support of its motion, the Defendants assert that, based on the Debtor's admissions, the general release was given unconditionally, and therefore, the commencement of this adversary proceeding against the Defendants was frivolous, without merit, and in bad faith.

After examining the documents, including the Stipulation of Settlement, the Debtor's complaint, and the subsequent memoranda of law, this Court believes that the Debtor commenced the instant adversary proceeding based on a good faith litigation theory and for a proper purpose. Accordingly, this Court finds that the Debtor did not commence a frivolous suit against the Defendants, and therefore, the imposition of sanctions pursuant to Fed.R.Bankr.P. 9011 and Fed.R.Civ.P. 11 are not warranted.

## CONCLUSIONS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(E) as it is a core proceeding concerning an order to turn over property of the estate.

2. The Defendants' motion for summary judgment seeking to dismiss the Debtor's complaint pursuant to Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56 is granted.

3. The Defendants' motion to impose sanctions against the Debtor pursuant to Fed.R.Bankr.P. 9011 and Fed.R.Civ.P. 11 is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.