### In re AMERICAN MOTOR CLUB, INC., Debtor.

### AMERICAN MOTOR CLUB, INC., Plaintiff.

v.

### Nicholas NEU, David Gershuny and Jacqueline Couch, as Executor of the Estate of Dante Senise, Defendants.

No. 887–70763–260.
Adv. No. 189–0044.

United States Bankruptcy Court,
Eastern District of New York.

Aug. 11, 1992.

Phillips, Nizer, Benjamin, Krim & Ballon by Louis A. Scarcella, Garden City, N.Y., for debtor.

Philip Irwin Aaron, P.C. by Philip Irwin Aaron, Jules A. Epstein, Syosset, N.Y., for the Creditor Committee.

Rosner & Goodman by Marianne F. Murray, New York City, for Nicholas Neu and David Gershuny.

Spodek & Brownstein by Jerome D. Brownstein, New York City, for Jacqueline Couch.

DECISION ON MOTION FOR SUMMARY JUDGMENT SEEKING PAYMENT ON PROMISSORY NOTES AND CROSS–MOTION FOR SUMMARY JUDGEMENT SEEKING TO DISMISS THE OFFICIAL COMMITTEE OF UNSECURED CREDITOR'S COMPLAINT

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which the Official Committee of Unsecured Creditors (the "Committee") is the plaintiff seeking payment on certain promissory notes allegedly executed and delivered by the defendants to the Debtor, wherein it moves

for summary judgment (the "Motion") against defendants Nicholas Neu ("Neu"), David Gershuny ("Gershuny"), and Jacqueline Couch as Executor of the Estate of Dante Senise ("Senise" or the "Senise Estate"). Pursuant to this Court's order of April 30, 1991, the Committee was empowered to bring and defend all litigation proceedings by or against American Motor Club, the debtor herein (the "Debtor" or "AMC"). In response to the Committee's motion, the Senise Estate filed a motion for summary judgment, which has been deemed a cross-motion by the Court (the "cross-motion"). For the reasons stated below, both motions are denied.

### FACTS

The Debtor was in the business of selling pre-paid collision repair contracts to the general public in the state of New York. On April 8, 1987, the Honorable Milton M. Richardson of the Supreme Court of the State of New York, County of New York, entered an order in an action instituted by the State of New York against the Debtor permanently enjoining it from conducting its auto insurance business and imposing penalties of $5,001,000.00 jointly and severally against the Debtor, John Senise and Neu, and $10,500.00 jointly and severally against John Senise and Neu. However, on October 29, 1987 both judgments against Neu and the $5,001,000.00 judgment against Senise were vacated by the Appellate Division of the Supreme Court of New York, County of New York. *People by Abrams v. American Motor Club, Inc.*, 133 A.D.2d 593, 520 N.Y.S.2d 383, 520 N.Y.S.2d 383 (1st Dept.1987).

The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 19, 1987. On April 18, 1989, the Committee commenced the within adversary proceeding against Neu, Gershuny and the Senise Estate, seeking payment on the notes allegedly executed and delivered by the defendants to the Debtor.

It is alleged in the complaint and cross motion that on or about May 2, 1986, Neu, a former officer and director of the Debtor, executed and delivered to the Debtor two

promissory notes: one in the sum of $300,000.00, payable on May 2, 1988 (the "Neu Note I") and a second in the sum of $305,000.00 payable on January 31, 1987 (the "Neu Note II"). The Committee also claims that Gershuny, President of International Tillex Enterprises, Ltd. ("Tillex"), the Debtor's parent corporation, executed and delivered to the Debtor two promissory notes, the first executed on May 2, 1986 in the amount of $180,000.00 (the "Gershuny Note I") and the second on May 30, 1986, in the sum of $181,852.00 (the "Gershuny Note II"). In addition, the Committee claims that Senise, an original incorporator, shareholder, officer, and director of the Debtor, executed and delivered to the Debtor a promissory note in the sum of $305,000.00 payable on January 31, 1987 (the "Senise Note"). The Committee asserts that Neu, Gershuny, and the Senise Estate have refused to pay the Notes upon their maturity.

The Senise Estate filed a cross-motion for summary judgment arguing that it is not liable to the Debtor for the repayment of the Senise Note due to the fact that the signature on the note is a forgery, and furthermore, that no consideration was given in exchange.

### A. *The Neu Notes*

In opposition to the Committee's Motion for Summary Judgment, Neu alleges that the copy of Neu Note I attached to the complaint is materially different from the copy of Neu Note I attached to the Committee's motion. The copy of Neu Note I attached to the complaint has a due date of May 2, 1988, with an interest rate equal to the best rate of the Israel Discount Bank. However, the copy of Neu Note I attached to the Committee's motion has a due date of the earlier of January 31, 1987 or the closing of a sale of property located at Nine Partner's Lane, Millbrook, New York, with an interest rate equal to 1% above the prime rate as set by the Federal Reserve Board. Neu argues that, due to this discrepancy, the Committee should be compelled to produce the originals of all Notes on which the Committee seeks summary

judgment. In response, the Committee argues that, since Neu does not question the signature on Note I, production of the original documents is not required under Fed. R.Evid. 1003, which provides that:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Fed.R.Evid. 1003. The Committee argues that the discrepancy affects only the date the note matured, not Neu's underlying obligation on the Note, since he admits that he signed the original Note.

In addition, Neu asserts that the portion of the complaint based on the $300,000.00 Neu Note I should be severed from this proceeding, since this Note is presently consolidated with claims in another adversary proceeding brought by the Committee against Neu's wife, Marie Neu, in which it is seeking to impress a constructive trust and equitable lien on the Neus' residence. Neu argues that the Committee should not have the opportunity to dispute the same note against Neu in two different proceedings. In response, the Committee claims that Neu Note I is an issue in the present adversary proceeding since the stipulation severing and consolidating it with the Marie Neu adversary proceeding may not be effective, and that only one judgment based on the note is sought for the benefit of the creditors.

Although Neu Note II is dated May 2, 1986, Neu states that it was not actually executed or delivered until January or February of 1987. Neu contends that prior to January of 1987 he received payments of $300,000.00 and $305,000.00 as commissions and compensation in consideration for services rendered. Therefore, since he did not receive any additional consideration upon signing the notes, the notes are void for lack of consideration. In support, Neu alleges that he reported the $300,000.00 and $305,000.00 as income on his 1987 State and Federal income tax forms, and that Philip Plaskin ("Plaskin"), President of Tillex, tacitly approved of the payment as compensation for services in connection with limousine livery services.

Neu maintains that in late January or early February of 1987, Sam Ford ("Ford"), acting as the controlling party and designee of Tillex, requested that he sign the notes to enable Tillex to represent prior compensation as loans on its financial statements which would be disseminated to the public.

Furthermore, Neu claims that in order to induce him to sign the notes, Ford stated that he would receive an employment contract and/or voting trust agreement ensuring employment in the Debtor's senior management for a period of five years, and during the term of this employment, the notes would be forgiven. However, in the event that he did not sign the notes, his employment with the Debtor would be terminated. Neu argues that the notes are void as induced by fraud based on the fact that at the time Ford represented to him that the notes would be forgiven, Ford knew that neither he nor Tillex had any intention to forgive the notes and that Ford had already instructed the management of British Insurance Management Co. ("BIM"), Tillex's subsidiary and Debtor's direct parent, that it vote to remove the Debtor's Board of Directors and dismiss Neu.

In response, the Committee claims these representations are impermissible hearsay, Neu's involvement in such a fraud scheme bars his defense as a matter of public policy inasmuch as courts do not aid either party to an illegal contract, and the defense that the Note is void for lack of consideration is unavailable to one who knowingly participates in the deceit. In addition, the Committee argues, the fraud claims are not viable since it was unreasonable for Neu to rely on a promise of continued employment given that he was aware of the aforementioned action instituted by the State of New York against the Debtor pending in the New York State Supreme Court at the time.

*B. The Gershuny Notes*

In opposition to the Committee's Motion, Gershuny argues that he was fraudulently

induced to sign the notes, and that the notes are therefore void as illegal. In addition, Gershuny claims, the notes are void for lack of consideration.

Although the Gershuny Notes are dated May 2 and May 30, 1986, respectively, Gershuny states that they were not executed until January or February of 1987. Gershuny alleges that prior to January 1987, he received payments of $181,852 as commissions and compensation in consideration of services rendered. Gershuny claims that he executed the first note for $180,000 because that was his approximation of the sum he had earlier received as compensation, and that he executed the second note after he told Plaskin or AMC's attorneys that he had actually received $181,852 as compensation. In support, Gershuny alleges that the $181,852 in compensation was reported by him as income on his state and federal income tax returns. Therefore, Gershuny argues, since he did not receive any additional consideration for executing and delivering either note, the notes are void for lack of consideration.

Gershuny maintains that in late January or early February of 1987, Ford, acting as the controlling party and designee of Tillex, requested that he sign the notes to enable Tillex to represent prior compensation as loans on its financial statements which would be disseminated to the public. Gershuny claims that he was assured by Ford that the indebtedness evidenced by the Notes would thereafter be forgiven. However, Gershuny alleges that at the time Ford represented that the Notes would be forgiven, Ford knew that neither he nor Tillex had any intention to forgive the notes, and that therefore the notes are void as induced by fraud.

In response, the Committee claims that these representations are impermissible hearsay, and that Gershuny's involvement in this fraud scheme bars his defenses as a matter of public policy in that courts do not aid either party to an illegal contract, and

that the defense that the note is void for lack of consideration is unavailable to one who knowingly participates in such a deceit. In addition, the Committee argues, the fraud claims are not viable, since it was unreasonable for Gershuny to rely on the promise of note forgiveness made by Ford or Plaskin, who were not legal directors of AMC.

In addition, Gershuny argues that the Committee should be compelled to produce the original notes on which the Committee seeks summary judgment. In response, the Committee claims that production of the original notes is not required, since Gershuny does not question his signature nor the authenticity of the notes.

*C. The Senise Note*

The Senise Estate argues that the signature on the Senise Note is not that of Dante Senise. In support, the Senise Estate submitted the affidavits of Catherine Senise, Dante Senise's widow, and Jacqueline Couch ("Couch"), the Senises' daughter and the executrix of Dante Senise's estate, which claim that the Senise Note was not signed by Dante Senise. The affidavits allege that Senise did not sign documents of legal import without including his middle initial "C" and that the signature on the Senise Note lacks the middle initial "C". In addition, the Senise Estate submitted the affidavit of Paul Osborn, a forensic documents examiner, who, while noting the missing "C" and other differences between the Senise Note signature and specimens of Dante Senise's signature,[1] stated that a definitive identification of the signature on the Senise Note can not be rendered based on the writing samples and the copy of the Senise Note submitted to him, due to the fact that the Committee has not produced the original Senise Note.

The Committee asserts that Dante Senise did in fact execute the Senise Note. In support, the Committee argues that the

---

**1.** Differences between the Senise Note signature and specimens of Dante Senise's signature include:

(1) The signature on the Senise Note is larger in size than the specimens;

(2) The "S" on the Senise Note is unlike any "S" in the specimens; and

(3) The "D" on the Senise Note has a finishing loop that extends longer to the left than any of the specimens.

Osborn affidavit does not render an opinion as to the genuineness of Dante Senise's signature on the Senise Note and therefore has no probative value.

In addition, the Committee, in opposition to the Senise Estate's claim that Dante Senise never signed a legal document without using his middle initial "C", has offered numerous documents of legal import executed by Dante Senise without a middle initial "C". These documents include a deed on which Dante Senise's signature is notarized by Andrew Goodman, Esq., the Debtor's attorney, a corporate resolution of the Debtor executed by Dante Senise as a director, and thirteen checks endorsed by Dante Senise, including checks co-endorsed by his widow Catherine Senise.

Furthermore, the Committee asserts that individuals familiar with the affairs of the Debtor admit, in sworn testimony, that Dante Senise did sign the Senise Note. The Committee alleges that the testimony of Senise's son, John Senise, the Debtor's corporate attorney, Andrew Goodman, and a corporate director, Louis Tirelli, confirms that Senise executed the Senise Note and agreed to repay the monies extended to him.

Finally, the Committee asserts that Dante Senise ratified the obligation created by the Senise Note by not contesting two letters delivered to him by Tillex, which confirmed his obligation to repay the debt.

The Senise Estate additionally alleges that even if Dante Senise did in fact sign the Senise Note, it is void for lack of consideration. In support of this claim, the Senise Estate again offers the affidavits of Catherine Senise, who states that Dante Senise never received the $305,000.00 from AMC that the Senise Note purports to evidence, and of Jacqueline Couch, who claims that the checks Dante Senise received from AMC were salary payments of $3,000.00 per week and commissions on the sale of AMC contracts to livery services. In addition, Couch claims that there were no deposits made into Dante Senise's bank ac-count in the amount of $305,000 during 1986. The Senise Estate maintains that the sixteen cancelled checks, dated June 1985 through July 1986 and totalling approximately $280,000.00, submitted by the Debtor do not aggregate to the amount of the Senise Note, and that some $76,000 of these checks actually post-date the Senise Note, which was dated May 2, 1986. Therefore, the Senise Estate argues, the cancelled checks could not be consideration for the Senise Note, but instead were salary payments or commissions on livery service contracts.

In opposition, the Committee claims that Senise's salary ranged between $500.00 and $1,000.00 per week, evidenced by weekly checks drawn to Dante Senise and by the testimony of John Senise and the Debtor's bookkeeper, Sandra Bartfield. The Committee therefore alleges that the series of checks, payable in large denominations ranging from $6,000.00 to $53,000.00, could not be salary payments to Dante Senise.

The Committee claims these checks represent either a direct loan to Dante Senise or improper livery service car commissions which he converted to a loan upon signing the Senise Note. In support, the Committee points out that John Senise confirmed that Dante Senise executed the Senise Note in an amount equal to the livery service commissions that he received, that the Debtor's general counsel, Andrew Goodman, Esq., prepared corporate resolutions and promissory notes deeming the commission payments as loans from the Debtor to Senise, and that Dante Senise received correspondence from the president of and attorneys for Tillex, concerning repayment of the money.

In addition, the Senise Estate argues that the Senise Note can not be supported by the past consideration of improper livery service commissions due to the fact that the Senise Note, itself, does not recite nor describe the past consideration and therefore must fail under § 5–1105 of the New York General Obligations Law.[2]

---

**2.** N.Y.Gen.Oblig.Law § 5–1105 (McKinney 1992) states:

A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the

In response, the Committee argues that § 5–1105 does not require the explicit words "in consideration of" to deem past consideration valid. Furthermore, the Committee argues, the Senise Note is supported by N.Y.U.C.C. § 3–408 [3], which provides that consideration is not necessary for an obligation given in payment of an antecedent debt.

The Committee asserts that the monies received by Senise from the Debtor were then loaned to Gershuny. Gershuny disclosed to the Securities and Exchange Commission on February 25, 1987, pursuant to Rule 13D of the Securities Exchange Act of 1934, that Senise loaned him $300,000.00 for his purchase of publicly traded shares of Northeast Insurance Company.

## DISCUSSION

A motion for summary judgment is governed by Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7056, which provides in pertinent part:

> [T]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56.

In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastman Mach. Co., Inc. v. United States,* 841 F.2d 469 (2d Cir.1988); *In re Sapru,* 127 B.R. 306, 319 (Bankr.E.D.N.Y.1991). The

court must deny summary judgment where there is a genuine issue as to any material fact, and grant summary judgment where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson,* 477 U.S. at 247–52, 106 S.Ct. at 2506–11; *Hamilton v. Smith,* 773 F.2d 461, 466 (2d Cir.1985); *In re Kenston Management Co., Inc.,* 137 B.R. 100, 108 (Bankr.E.D.N.Y.1992).

The movant bears the burden of proving the absence of any genuine issue as to all material facts which entitle it to summary judgment. *Sapru,* 127 B.R. at 319; *In re F & L Plumbing and Heating Co., Inc.,* 114 B.R. 370, 374 (E.D.N.Y.1990). Once this initial burden is met, the opposing party must not only set forth specific facts showing there is a genuine issue for trial, but also that the disputed fact is material. *In re Gen. Am. Communications Corp.,* 130 B.R. 136, 152 (S.D.N.Y. 1991); *F & L Plumbing,* 114 B.R. at 374. Therefore, the opposing party may not merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position. *Gen. Am. Communications,* 130 B.R. at 152; *Kenston Management,* 137 B.R. at 108. *See also First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *United States v. Pent–R–Books, Inc.,* 538 F.2d 519 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

In addition, when determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As the Supreme Court in *Anderson v. Liberty Lobby, Inc.* stated:

---

3. N.Y.U.C.C. § 3–408 (McKinney 1992) states in pertinent part:

> [N]o consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind.

ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time it was given or performed.

[T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other[,] but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it ..." *Improvement Co. v. Munson,* 14 Wall. 442, 228, 20 L.Ed. 867 (1872).

*Anderson,* 477 U.S. at 252, 106 S.Ct. at 2516.

A motion for summary judgment will be denied "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances...." *In re Chas P. Young Co., (CPY Co. v. Ameriscribe Corp.),* 89–B–11879 (CB), slip op. at 11 (Bankr.S.D.N.Y. June 22, 1992) (quoting *In re Combs,* 40 B.R. 148, 151 (Bankr.W.D.Va.1984)). Therefore, not only must there be no genuine issue of material fact, but there must also be no controversy as to the inferences to be drawn from those facts in order for summary judgment to be granted. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Schwabenbauer v. Bd. of Educ. of the City Sch. Dist. of the City of Olean,* 667 F.2d 305, 313 (2d Cir.1981); *CPY,* slip op. at 12.

From the pleadings and supporting memoranda filed in this proceeding, it is this Court's conclusion that there exist genuine issues of material fact.

First, issues of material fact exist as to whether the monies received by Neu, Gershuny and Senise were compensation for services rendered and commissions on the sale of AMC contracts to livery services, or consideration in exchange for executing the notes in question. In addition, this Court must determine whether Neu and Gershuny where fraudulently induced into signing the notes.

Next, any material difference between the Neu Note I attached to the Committee's motion for summary judgment and the Neu Note I attached to their complaint must be examined. While the authenticity of Neu's signature is not an issue on either note, this Court must inquire as to why two notes containing entirely different terms exist.

Finally, the authenticity of the signature on the Senise Note is an issue of material fact which must be determined. The Committee has brought forth ample evidence to meet its initial burden to show that a genuine issue for trial continues to exist. First, the Committee has shown that the forensic expert's examination is inconclusive. Furthermore, the Committee has contested the affidavits of Catherine Senise and Jacqueline Couch, which state that Senise never signed a legal document without his middle initial "C", by offering documents signed by Dante Senise without his middle initial "C". Finally, the Committee has offered sworn testimony from individuals familiar with the events which indicate that Senise did indeed sign the Senise Note.

## CONCLUSIONS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(E) and (O) as it is a core proceeding concerning an order to turn over property of the estate.

2. The Plaintiff's motion for summary judgment seeking payment on certain promissory notes executed and delivered by the defendants to the Debtor is denied.

3. Senise Estate's cross-motion seeking an order finding it not liable to the Debtor for the repayment of the Note is denied.

4. A hearing is to be scheduled to examine the genuine issues of material fact that exist, as are more fully discussed in this decision.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.